UNITED STATES, Appellee,

v.

Alexander E. GIAMBRA, Specialist,
U.S. Army, Appellant.

No. 64,331.
CM 8801625.

United States Court of Military Appeals.

Argued March 13, 1991.

Decided September 30, 1991.

For Appellant: *Captain Edward T. Keable* (argued); *Lieutenant Colonel Russell S. Estey, Captain Brian D. Bailey* (on brief); *Captain Patricia D. White.*

For Appellee: *Captain Jonathan F. Potter* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Randy V. Cargill* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial made up of officer and enlisted members convened in Mainz, Federal Republic of Germany. Contrary to his pleas, he was convicted of attempted rape and indecent assault upon his 17–year–old stepdaughter, in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 USC §§ 880 and 934, respectively. He was sentenced to 5 years' confinement, total forfeitures, and a dishonorable discharge. The adjudged sentence was approved by the convening authority, and appellant's conviction was appealed to the Court of Military Review.

Pending that appeal, appellant petitioned for a new trial. Art. 73, UCMJ, 10 USC § 873. This action was based on a post-trial statement in which the victim recanted the testimony she gave at trial. She made her comments to a paralegal, at a law firm in the United States, after she returned from Mainz, Germany. The transcript of that interview was presented to the Court of Military Review, but that court refused to accept it as appropriate evidence supporting a petition for a new trial. Ultimately, the court affirmed the findings and sentence imposed by the court-martial, and it denied the petition for new trial in an unpublished opinion dated January 10, 1990.

Appellant then petitioned this Court for review. Art. 67(a)(3), UCMJ, 10 USC § 867(a)(3) (1989). He also filed a series of motions and eventually petitioned this

Court for a new trial. Included in the documents filed is an affidavit from the victim that recants her allegations about her stepfather, unequivocally stating: "The statements I made at trial concerning what allegedly happened with Private Giambra were fabrications." This affidavit now forms the basis for appellant's renewed efforts to obtain a new trial.[1]

Upon consideration of appellant's petition for review, we granted the following issues:

I

WHETHER THE MILITARY JUDGE IMPROPERLY RELIED ON MILITARY RULE OF EVIDENCE 803(24) TO ADMIT THE HEARSAY STATEMENTS OF APPELLANT'S WIFE.

II

WHETHER THE MILITARY JUDGE ABANDONED HIS IMPARTIAL ROLE BY HIS UNNECESSARY AND SARCASTIC CRITICISM OF DEFENSE COUNSEL'S EXAMINATION OF THE PRINCIPAL DEFENSE WITNESS AND BY OVERRULING DEFENSE COUNSEL'S OBJECTIONS TO PLAINLY LEADING QUESTIONS POSED TO A GOVERNMENT EXPERT WITNESS.

III

WHETHER THE MILITARY JUDGE ERRED IN REFUSING TO CALL A WITNESS REQUESTED BY A COURT MEMBER AFTER DELIBERATIONS HAD COMMENCED.

Appellant was convicted of the attempted rape and indecent assault of his stepdaughter in the early morning hours of March 7, 1988. The crimes came to light the next afternoon, March 8, 1988. Also on March 8, agents of the Criminal Investigation Command (CID) visited appellant's home to

---

1. Appellant had previously petitioned the Court of Military Review for a new trial. However, at that time, the affidavit from his stepdaughter was not available. In his petition for new trial, appellant relied upon and sought admission of secondary factual support. The court denied admission of those exhibits and denied the petition for new trial.

execute a search warrant that targeted the victim's room. They also questioned appellant's wife (the victim's natural mother) for a short time at the home, and then she accompanied them back to the CID office, where she gave what purports to be a sworn written statement.[2]

In the statement, Mrs. Giambra described the conversation she had with her daughter the afternoon following the assault. She stated that the victim had told her that, on the previous night, appellant had been in her room naked, touching her, and lying on top of her. She also stated that she had confronted appellant about the allegations, and he had responded that "he didn't know why he did it"; and that he had been in his stepdaughter's "bed more than once." The statement further mentioned that, on March 7, appellant had come home for lunch and told her "he needed help," but a conversation about what he needed help with had been put off because she was sick.

At trial, government counsel moved *in limine* to determine admissibility of the statement given by Mrs. Giambra.[3] The military judge ruled that it was admissible under Mil.R.Evid. 803(24), Manual for Courts–Martial, United States, 1984, and it was received.

■ The first granted issue questions whether the military judge's reliance on Mil.R.Evid. 803(24) to admit the statement made by appellant's wife was error. Mil.R. Evid. 803(24) provides that a hearsay statement not otherwise admissible may be admitted if: (1) "the statement is offered as evidence of a material fact"; (2) the statement must be "more probative on the point for which it is offered than any other evidence" that the opponent can reasonably procure; (3) introduction of the statement

must serve "the interests of justice"; and (4) the statement must have "circumstantial guarantees of trustworthiness" equivalent to those present in the first 23 exceptions of Mil.R.Evid. 803. *United States v. Dunlap*, 25 MJ 89 (CMA 1987); *United States v. Powell*, 22 MJ 141 (CMA 1986); *United States v. Bailey*, 581 F.2d 341, 346 (3d Cir.1978).

There is no doubt that the statement is relevant "evidence of a material fact." Mil.R.Evid. 401, 402, 803(24). Indeed, it tends to prove several material facts. For example, it corroborates the dates of the alleged incident, March 6 and 7, 1988. It contains the victim's complaint to her mother that "Alex was in her bed with nothing on and was touching her on the breasts." It contains appellant's admission that he had tried "to sleep with" the victim. In other words, the statement contains evidence of all the material facts in the case, and it corroborates almost all aspects of the victim's testimony. Likewise, the statement tends to impeach the in-court testimony of Mrs. Giambra as being inconsistent with this prior statement.

However, in its trial brief, the Government never made clear why they sought to offer it. The military judge resolved any doubts. He allowed the statement as substantive evidence of the "material facts" of the case. In a sweeping decision, the military judge also ruled that "the statement is more appropriate on the point for which it is offered and [sic] any other evidence which the proponent, that is, the Government, can procure through reasonable efforts." In the same sweeping pronouncement, he also concluded that "the interest of justice" would "be best served by admission of the statement into evidence."

---

**2.** Appellant's wife never took an oath supporting her written statement. While the statement says it was given under oath, in fact it was not. The agent told her it "was a sworn statement," but he never administered the oath. The record discloses that she believed at the time that the statement was sworn; however, there was no oath. The statement was not attacked on the grounds that Mrs. Giambra never took the oath.

**3.** A motion *in limine* normally has the purpose of preventing the introduction of an adversary's evidence. *See United States v. Gamble*, 27 MJ 298, 306 (CMA 1988). In this case, the Government, rather than offering the statement, sought a pretrial ruling as to admissibility.

Lastly, the military judge went to great lengths to conclude that the statement was made under "circumstantial guarantees of trustworthiness." He listed a number of circumstances which made it clear to him that the statement was trustworthy.

It is actually quite apparent from the contentions of government counsel at trial and from the facts of the case that the Government was concerned that its case was falling apart. The victim's mother, initially the most important corroborating witness, had turned against the Government and was claiming that her daughter had lied. There was no physical evidence— only the victim's story. Against this background, it is easy to understand the Government's eagerness to offer the statement as substantive evidence of the offense.

Notwithstanding the fact that the military judge used all of the correct incantations in determining admissibility of the statement, we hold that his admission of the statement during the Government's case-in-chief was error.

▉ First of all, the residual-hearsay exception to the Military Rules of Evidence is "intended to apply [only] to highly reliable and necessary evidence." S.Saltzburg, L.Schinasi, and D.Schlueter, *Military Rules of Evidence Manual* 659 (2d ed. 1986). *See also Idaho v. Wright,* — U.S. —, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The "highly reliable" prong is found in the language of the rule. Mil. R.Evid. 803(24) requires that the proffered hearsay must have "equivalent circumstantial guarantees of trustworthiness" as do the first 23 exceptions. *See United States v. Jones,* 30 MJ 127, 131 (1990) (Cox, J., concurring). A statement given to a police officer does not *per se* lack reliability, but standing alone, the fact that a statement is given to a police officer, even under oath, does not qualify that statement for admission into evidence. *See United States v. Hines,* 23 MJ 125, 136 (CMA 1986). It requires an analysis of numerous factors indicating the time, place, and circumstances of the making of the statement to

qualify it. *See Idaho v. Wright,* 110 S.Ct. at 3149; *United States v. Yeauger,* 27 MJ 199 (CMA 1988); *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989).

▉ Even reliable hearsay, however, does not come into evidence through the residual-hearsay exception unless it is "necessary" to the proof of the case. Mil.R. Evid. 803(24) clearly requires that the proffered evidence be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." In this case, not only was there abundant other evidence "probative on the point" available to the prosecution, but also that evidence was actually introduced in the trial. What could be more probative on the point of the assault than the victim's own testimony that she was assaulted? Additionally, Mrs. Giambra was available and did testify. Her live testimony was certainly more probative than her *ex parte* pretrial statement.

The Government's reliance on *United States v. Powell, supra,* is inapposite. In *Powell,* the out-of-court declarations of the key witness were not only highly reliable, they were also absolutely necessary for the Government's case. In this case, the statement was not necessary to the Government's case. Additionally, we found in *Powell* that there was no confrontation problem. *Id.* at 141 n.2; 145 (Everett, C.J., concurring).

However, we recognize that Mrs. Giambra's statement to the CID may well have been admissible for other purposes once she testified contrarily to her earlier statement. Thus, we are not prepared to say that admission of the statement constituted reversible error. The error may be harmless. Art. 59(a), UCMJ, 10 USC § 59(a).

Before we engage in an analysis to determine whether the error was harmless, however, we are compelled to turn our attention to the petition for new trial and the victim's affidavit that she lied under oath at appellant's trial. Whatever the state of the evidence at the conclusion of the case

against appellant, two things are now clear. First, appellant's wife has recanted portions of the written statement that she gave to the police at the time of the alleged incident; and secondly, the victim has recanted her testimony. This leads to one of two conclusions: (1) the two witnesses are now telling the truth, in which case appellant should not suffer the consequences of a criminal conviction; (2) the two witnesses are now lying, and appellant has been justly convicted. Justice should not hang by such a tenuous thread. *See generally United States v. Guaglione,* 27 MJ 268 (CMA 1988).

Furthermore, if the victim lied under oath at trial, she also lied to her mother. The mother's statement to the police is predicated upon the truth of the victim's complaint to her.

■ We are most certainly aware that petitions for new trial based upon a witness' change of her testimony are not viewed favorably in the law. *See United States v. Bacon,* 12 MJ 489 (CMA 1982). Indeed, appellant has the heavy burden of establishing his entitlement to relief. *Id.* A new trial should not be granted unless "[t]he court is reasonably well satisfied that the testimony given by a material witness is false." *Larrison v. United States,* 24 F.2d 82, 87 (7th Cir.1928). We are also mindful that many courts treat "recanted testimony" in the same manner as other forms of newly discovered evidence; that is, "[t]hat the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." *Id.* at 88. However, we are disinclined to put such an onerous burden on a petitioner when the alleged perjurer is the prosecutrix herself. Obviously, appellant has contended throughout that she has been lying. The only thing newly discover-

ed is her admission that she was lying. If indeed she gave perjured testimony, her conduct amounted to "fraud" on the court. *See* RCM 1210(f)(3), Manual, *supra.*

■ Thus, the real problem is for us to determine whether the testimony given at trial was false. As we have stated elsewhere, the Uniform Code of Military Justice did not envision a post-conviction practice where motions for new trial based upon evidentiary, collateral attacks could be easily made. *See United States v. Polk,* 32 MJ 150 (CMA 1991). Article 73, which provides for petitions for new trial, is silent as to the procedure to be used. RCM 1210(g) leaves the procedure for acting upon the petition for new trial up to the party responsible for acting upon the request.

In *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967), this Court recognized that a remand to a convening authority for the purpose of convening a hearing to take testimony and resolve these factual controversies may be appropriate to the fair resolution of the case. We deem this case to be such a circumstance.

■ Accordingly, before we decide whether admission of Mrs. Giambra's double hearsay statement as substantive evidence was prejudicial error, we want a military judge to take such testimony as he or she deems proper to determine, as a matter of fact, whether the victim's testimony at trial was truthful or whether she is now telling the truth. If the judge determines that the victim is now being truthful, the findings and sentence should be set aside and the charges dismissed. If the military judge determines that the victim is now lying (or if she refuses to testify under oath), then the case should be returned directly to this Court for further consideration of the granted issues.[4] In any event,

---

4. The second granted issue arises out of a number of exchanges between the military judge and defense counsel which culminated in the following admonition in front of the court members:

MJ: Counsel, I'm going to give you about ten seconds to figure out what you're doing here, and then I'm going to give you an oppor-

tunity to do it. I am not going to permit you to carry on this rambling conversation with your witness, punctuated by your own editorial comments once again. Get to it. Ask the question, let the witness answer, and let the witness alone answer, please. Go ahead.

the burden of proof is on appellant to prove by the greater weight of the evidence that the victim lied at his trial.

The decision of the United States Army Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Army for resubmission to a convening authority for an appropriate hearing to determine whether the interests of justice require granting appellant a new trial.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

---

Later in the trial, defense counsel stated that he was "just trying to make it clear for the jury to understand."

The judge responded: "Well, I'll tell you something. You're not succeeding with me. I don't know how you're doing with them, but you're not succeeding with me."

The third granted issue arises out of an incident which occurred after the members had begun deliberations on findings. One court member asked to hear testimony from a person who had not appeared as a witness, but who had been mentioned by other witnesses. Appellant contends in his petition for a new trial that this witness would have testified that the victim told her that "nothing had really happened." The military judge refused, without explanation, to call the additional witness.