# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER[1], and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist SHAWN M. E. PELLETIER**
**United States Army, Appellant**

ARMY 20100711

Headquarters, 1st Cavalry Division
Matthew McDonald, Military Judge (trial)
Gregory Gross, Military Judge (*DuBay* Hearing)
Lieutenant Colonel Mark H. Sydenham, Staff Judge Advocate

For Appellant: Lieutenant Colonel Jonathan F. Potter, JA; Captain Matthew T. Jones, JA (on reply brief to supplemental brief following *DuBay* Hearing); Lieutenant Colonel Jonathan F. Potter, JA; Captain Jason Nef, JA; Captain Matthew M. Jones, JA (on supplemental brief regarding *DuBay* Hearing and reply brief following *DuBay* Hearing); Colonel Patricia Ham, JA; Major Richard E. Gorini, JA; Captain Matthew M. Jones, JA (on supplemental brief and supplemental petition for new trial following *DuBay* Hearing).

For Appellee: Major Robert A. Rodigues, JA; Captain Steve T. Nam, JA (on supplemental brief, supplemental brief regarding *DuBay* Hearing, and supplemental petition for new trial following *DuBay* Hearing);

14 August 2013

-----------------------------------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON PETITION FOR NEW TRIAL
-----------------------------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOK, Senior Judge:

On 4 August 2010, a military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of aggravated sexual assault of a child between the ages of 12 and 16 years, one specification of sodomy with a child between the ages of 12 and 16 years, and one specification of communicating a threat, in violation of Articles 120, 125, and 134, Uniform Code of

---

[1] Judge GALLAGHER took final action on this case prior to her permanent change of station.

PELLETIER – ARMY 20100711

Military Justice, 10 U.S.C. §§ 920, 925, 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to be discharged from the service with a bad-conduct discharge, to be confined for four months, and to be reduced to the grade of E-1. The convening authority approved the adjudged sentence. The case was then forwarded to this court for review pursuant to Article 66, UCMJ.

## BACKGROUND

At trial, EB, the fourteen-year-old victim of the sexual assault and sodomy offenses, testified against appellant. In general, her testimony was that on multiple occasions she performed oral sex on and had sexual intercourse with appellant. EB also testified that after discovering she had told her former boyfriend, CT, that she had performed oral sex on appellant, appellant threatened to make CT disappear if she revealed any other information. This statement formed the basis for the communicating a threat charge.

On 2 February 2012, pursuant to Article 73, UCMJ, appellant filed a petition for new trial based on newly discovered evidence. The alleged "new" evidence was documented in a post-trial affidavit by EB, dated 10 January 2012, wherein she recanted her claims of sexual encounters with appellant. She stated, "I've never had sex of any kind" with appellant. EB also claimed appellant "never said he would make [CT] disappear."

Also on 2 February 2012, appellate defense counsel filed an appellate brief assigning five errors, one of which stated:

> THE MILITARY JUDGE'S POST-TRIAL COMMENTS
> CREATED AN APPEARANCE OF BIAS THAT
> MATERIALLY PREJUDICED THE APPELLANT AND
> WARRANTS REVERSAL UNDER *LILJEBERG V.*
> *HEALTH SERVICES ACQUISITIONS CORPS.*, 486 U.S.
> 847 (1988).

In support of the above assignment of error, appellant submitted an affidavit from one of appellant's trial defense counsel. In that affidavit, the defense counsel stated that in a post-trial "bridging the gap" session, the military judge made disparaging comments about military spouses in general and in particular about the testimony of appellant's wife, KP, at trial. Specifically, it was alleged the military judge stated KP's testimony was damaging to the defense and "that he can't stand military wives and believes they are inflammatory because they will say and do anything to protect their paycheck." During the trial, KP testified as a defense witness.

On 4 September 2012, we ordered a hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), and noted that as a reviewing

2

court evaluating a petition for new trial based on newly discovered evidence, we are to determine whether this evidence "if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused." Rule for Courts-Martial [hereinafter R.C.M.] 1210(f)(2)(C). We further noted EB's testimony, in light of her post-trial affidavit, may amount to fraud on the court-martial. Fraud on the court-martial also constitutes grounds for a new trial if the fraud "had a substantial contributing effect on a finding of guilty or the sentence adjudged." R.C.M. 1210(f)(3).

We further found that based on the facts of this case, where the alleged perjurer is the accusing witness and there is a lack of corroborating physical evidence, a *DuBay* hearing is required in order for this court to properly assess the credibility of EB's recantation. *See United States v. Cuento*, 60 M.J. 106, 113 (C.A.A.F. 2004) and *United States v. Giambra*, 33 M.J. 331, 335 (C.M.A. 1991). In addition, we required this *DuBay* hearing to determine the facts surrounding the alleged statements by the military judge during the "bridging the gap" session.

On 25 September 2012, appellant filed a motion to stay the *DuBay* hearing with our superior court, the U.S. Court of Appeals for the Armed Forces (CAAF). On 23 October 2012, CAAF denied appellant's motion.

The *DuBay* hearing was held on 25 January 2013, and the presiding military judge subsequently made findings of fact and conclusions of law (Appellate Exhibit X). In regards to the issue of EB's post-trial recantation, EB testified at the *DuBay* hearing that her recantation was false. In his findings following the *DuBay* hearing, the military judge provided he is "convinced 100% that the recantation was false."

In response to the issue of whether the trial judge's post-trial comments created an appearance of bias that materially prejudiced appellant, the *DuBay* hearing first established the five individuals who were present during the "bridging the gap" session when the post-trial comments were allegedly made: the military judge, Major (MAJ) MM; two trial counsel, Captains (CPT) KB and CS; and two defense counsel, CPT NK and CPT VM. CPT VM signed the supporting affidavit in this case.

Regarding what they remember about this post-trial discussion, CPT VM testified consistently with her affidavit. However, none of the other witnesses present at the "bridging the gap" session entirely corroborated her account of the session's content, effect, and tone. Major MM denied making the alleged statements in question, but he did admit to likely discussing the risk of calling the spouse of an accused soldier as a witness and shared at least two of his past experiences to illustrate the point. Neither CPT KB nor CPT CS recalled MAJ MM making a

statement about military wives or spouses.[2]  Additionally, neither questioned his impartiality to preside as the military judge in appellant's case as a result of his statements during this post-trial session.  Based on his recollection of the post-trial session, CPT NK did not "think that there was any bias in this particular case as it relate[d]" to KB and also did not think MAJ MM exhibited an actual bias during the session that called into question the judge's impartiality.

The *DuBay* hearing judge concluded he could not "determine exactly what the military judge said about military spouses or wives during the 'bridging the gap' session."  The judge further found MAJ MM had made a "comment about the credibility of KP and gave examples from his own cases as a counsel to make a point.  All four counsel interpreted the comments and examples a different way."

On 3 April 2013, we afforded appellant and the government the opportunity to file additional pleadings.  We have now received multiple briefs on behalf of both parties.  In those briefs, appellant raises additional assignments of error, including a challenge to the *DuBay* hearing judge's findings of fact.  Because we do not find the *DuBay* judge's findings of fact clearly erroneous, we have rejected this assigned error.  The other newly raised assignments of error do not merit discussion or relief.  In response to appellant's original assignments of error and petition for new trial, the two issues we ordered to be addressed by the *DuBay* hearing merit discussion but ultimately no relief.  Additionally, appellant's fifth initial assignment of error merits discussion and relief.

## LAW AND DISCUSSION

We review a military judge's fact-finding under a clearly erroneous standard and conclusions of law under a de novo standard.  *United States v. Ayala*, 43 M.J. 296, 298 70 M.J. 283 (C.A.A.F. 1995).  "Thus on a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."  *Id*.  These same standards apply to both the *DuBay* hearing judge and the trial judge.  *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2004).

---

[2] Although CPTs KB and CS did not recall MAJ MM making comments regarding military spouses or wives, they both testified about comments MAJ MM made concerning women.  CPT KB "was a little bit troubled" by MAJ MM's comments because he "appeared to make a statement that women do not tell the truth on the stand or in court."  Captain CS recalled one of MAJ MM's statements "gave [her] pause" and although she was tired and the statement was made "a while ago", she was left with the impression that MAJ MM said "he knew that female victims of rape have a tendency to lie."  Although the accuracy of their recollections in this regard is immaterial in resolving the issue before us, we note MAJ MM convicted appellant based primarily on the testimony of EB, a female victim of sexual assault.

*Petition for New Trial*

"Petitions for new trial based on a witness's recantation 'are not viewed favorably in the law.'" *United States v. Cuento*, 60 M.J. 106 (C.A.A.F 2004) (quoting *United States v. Giambra*, 33 M.J. 331, 335 (C.M.A. 1991)). A petition for a new trial should not be granted unless "[t]he court is reasonably well satisfied that the testimony given by a material witness is false." *Giambra* 33 M.J. at 335 (quoting *Larrison v. United States*, 24 F.2d 82, 87 (7th Cir. 1928)).

Appellant's request for a new trial was based on EB's post-trial recantation which called into question the truthfulness of her testimony at trial. However, EB testified at the *DuBay* hearing that her recantation was false and explained the motivation behind the false recantation. The *DuBay* judge is "convinced 100% that the recantation was false" after hearing all the testimony put forth on the issue. Accordingly, based on EB's testimony at the *DuBay* hearing and the findings of fact of the military judge, we are "not reasonably well satisfied that" EB's testimony at trial was false and deny appellant's request for a new trial.

*Military Judge's Post-Trial Comments*

In conducting our review of this issue, we begin with the premise that "[a]n accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (internal citation omitted). To help ensure this right, a military judge is required to disqualify himself based on specific grounds listed in Rule for Court Martial [hereinafter R.C.M.] 902(b), and "in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a).

Because appellant raises the issue of disqualification for the first time on appeal, we "examine the claim under the plain error standard of review." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (internal citation omitted). Further, the test we apply "is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness and impartiality were put into doubt by the military judge's actions." *Id.* (internal citations omitted). "The appearance of impartiality is reviewed on appeal objectively" and uses the standard found in *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982): "[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." *Martinez*, 70 M.J. at 158 (quoting *Kincheloe*, 14 M.J. at 50).

Appellant argues MAJ MM, as evidenced by a specific statement he made during the post-trial "bridging the gap" session, had a "pre-existing bias against military spouses" and, as such, should have disqualified himself from appellant's case pursuant to R.C.M. 902.

In rejecting appellant's argument, we first note the argument is based on a single witness, CPT VM, attributing the statement in question to MAJ MM. Major MM flatly denies making this statement. The other three witnesses present at the post-trial session deny hearing MAJ MM make the statement in question and none questioned MAJ MM's impartiality to preside over appellant's case based on anything he said during the post-trial session.

Captain VM, although functioning as one of appellant's trial defense counsel, failed to request a post-trial 39(a), UCMJ, session to address this issue. She also does not recall mentioning this statement to her Senior Defense Counsel, her Regional Defense Counsel, or the Chief Circuit Judge. This issue was not raised in appellant's R.C.M. 1105/1106 matters and while her co-counsel, CPT NK, handled the submission on behalf of appellant, CPT VM did not recall discussing the inclusion of this issue with CPT NK. Captain VM's post-trial affidavit submitted in support of this issue was completed on 24 January 2012, over 18 months after the post-trial session in question.

In addition, although not covered during the *DuBay* hearing, CPT VM, in her affidavit, stated MAJ MM, during the "bridging the gap" session, informed counsel that after KP refused to change her testimony concerning whether EB and CS were having sex in her house, "he couldn't believe anything the witness said and that it was very damaging to defense's case." However, at trial, after KP had already testified, to include testifying about the EB and CS issue mentioned above, and had been excused as a witness, it was MAJ MM who recalled KP, ostensibly to ask additional questions in an effort to evaluate the testimony of another witness. This fact shows the military judge still viewed KP's testimony and recollection as valuable and not completely without merit.

We ultimately find the *DuBay* judge's findings of fact were not clearly erroneous and reject appellant's argument to the contrary. First, we find the *DuBay* judge's finding of fact that it cannot be determined exactly what MAJ MM said during the "bridging the gap" session regarding military spouses or wives is not clearly erroneous. This is not surprising based on five people trying to recount a single conversation held almost two-and-a-half years prior to the *DuBay* hearing. The only produced attempt to reduce this conversation to writing is CPT VM's affidavit, created 18 months after the fact.

In addition, the circumstances under which the "bridging the gap" session was held contributed to the four captains interpreting the military judge's comments in disparate ways. It was ill-advised to begin this lengthy "bridging the gap" session after midnight and directly on the heels of a long day of trial. There are appropriate times and places for military judges to mentor counsel on how to improve their trial advocacy. The time MAJ MM chose for this session was not one of them.

6

We also agree with the *DuBay* hearing judge when he found that MAJ MM, as the military judge in a judge alone case, evaluated the credibility of KP as was his duty to do so; commented about KP's credibility; gave examples from his prior cases; and that the four counsel interpreted his comments in four different ways.

We further find that taken as a whole in the context of this trial, the legality, fairness, and impartiality of appellant's court-martial were not put into doubt by the military judge's actions. The findings of the *DuBay* hearing judge as well as our own detailed review of those proceedings and the record do not support a finding that MAJ MM was partial and thus required to disqualify himself from acting as a military judge in appellant's trial. Further, in applying the standard found in *Kincheloe,* a reasonable man knowing all the circumstances of this case would not conclude the judge's comments created an appearance that his impartiality might reasonably be questioned.

Because we do not find that MAJ MM's post-trial comments support a finding that he was either actually biased or created the appearance of bias, we find no error occurred in this case. Thus, we are not required to test for prejudice. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988); *Martinez*, 70 M.J. at 159.

*Failure to Allege an Article 134 Terminal Element*

The Specification of Charge IV alleged appellant communicated a threat and thereby violated Article 134, UCMJ. The specification at issue does not allege the terminal element of conduct that is prejudicial to good order and discipline (Clause 1) or of a nature to bring discredit upon the armed forces (Clause 2). "Where, as here, a specification neither expressly alleges nor necessarily implies the terminal element, the specification is defective." *United States v. Gaskins*, 72 M.J. 225, 232 (C.A.A.F. 2013) (citing *United States v. Fosler*, 70 M.J. 225, 229–30 (C.A.A.F. 2011)). However, appellant did not object to the form of the specification at trial, and "where defects in a specification are raised for the first time on appeal, dismissal of the affected charges or specifications will depend on whether there is plain error—which, in most cases will turn on the question of prejudice." *United States v. Humphries*, 71 M.J. 209 at 213–14 (C.A.A.F. 2012) (citing *United States v. Cotton*, 535 U.S. 625, 631–32 (2002)). Therefore, appellant must demonstrate "the Government's error in failing to plead the terminal element of Article 134, UCMJ, resulted in material prejudice to [appellant's] substantial, constitutional right to notice." *Id*. at 215; UCMJ art. 59(a). To assess prejudice, "we look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" *Id*. at 215–16 (citing *Cotton*, 535 U.S. at 633; *Johnson v. United States*, 520 U.S. 461, 470 (1997)).

After thoroughly reviewing the record, we do not find any indication that appellant was on notice of the missing terminal element. The government never

proffered its theory of criminality with respect to the terminal element and did not "put on any direct evidence of the terminal element." *Gaskins*, 72 M.J. at 233-34. *See also United States v. Goings*, 72 M.J. 202 (C.A.A.F. 2013) (finding the appellant was not prejudiced by the government's failure to plead the terminal element because it proffered its theory of criminality, presented direct evidence on the terminal element, and appellant put on a vigorous defense). Based on a totality of the circumstances in this case, we are not convinced appellant was placed on sufficient notice of the government's theory as to which clause(s) of Article 134, UCMJ, he violated. As a result, appellant's substantial rights to notice were materially prejudiced by the government's failure to allege the terminal element. *See* UCMJ art. 59(a). As such, we will take appropriate action in our decretal paragraph.

## CONCLUSION

Accordingly, upon consideration of the entire record and submission by the parties, we set aside the findings of guilty to Charge IV and its Specification. The remaining findings of guilty are AFFIRMED. The Petition for a New Trial is DENIED.

Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge Baker in his concurring opinion in *Moffeit*, the sentence as approved by the convening authority is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored. *See* UCMJ art. 75(a).

Judge GALLAGHER and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court