# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
**Appellate Military Judges**

## UNITED STATES OF AMERICA

v.

## BRIAN G. PROVORSE
## AIRCREW SURVIVAL EQUIPMENTMAN FIRST CLASS (E-6), U.S. NAVY

## NMCCA 201400301
## GENERAL COURT-MARTIAL

**Sentence Adjudged:** 27 March 2014.
**Military Judge:** CAPT Colleen Glaser-Allen, JAGC, USN.
**Convening Authority:** Commander, Naval Air Force Atlantic, Norfolk, VA.
**Force Judge Advocate's Recommendation:** CAPT T.J. Welsh, JAGC, USN.
**For Appellant:** Maj John Stephens, USMC.
**For Appellee:** Maj Suzanne Dempsey, USMC; Capt Cory Carver, USMC.

**8 October 2015**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

HOLIFIELD, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of two specifications each of aggravated sexual abuse of a child and indecent liberties with a child, in violation of

Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920.[1] The members sentenced the appellant to six years' confinement and a dishonorable discharge. The convening authority approved the sentence as adjudged.

The appellant now raises ten assignments of error (AOE):

(1) The military judge abused her discretion in finding the child victim unavailable for trial based on his absence of memory;

(2) The military judge abused her discretion in admitting the out-of-court statements of the child victim, as the statements did not possess circumstantial guarantees of trustworthiness;

(3) The military judge abused her discretion in admitting the out-of-court statements of the child victim as excited utterances;

(4) The child victim's uncorroborated hearsay statements were factually insufficient to support a conviction;

(5) The military judge committed plain error in allowing two Government witnesses to function as "human lie detectors" to bolster the child victim's credibility;

(6) The military judge abused her discretion in allowing Government witnesses to provide testimonial hearsay;

(7) The military judge abused her discretion in admitting non-pornographic photographs of young children found on the appellant's computers;

(8) The trial defense counsel (TDC) were ineffective by failing to object to hearsay, including testimonial hearsay;

(9) The military judge denied the appellant his Sixth Amendment right to confront witnesses against him by not requiring the child victim to testify; and,

---

[1] As the offenses allegedly occurred in 2010, the version of Article 120, UCMJ in effect from 1 October 2007 through 27 June 2012 applies.

(10)  The cumulative effect of errors requires setting aside the findings and sentence.

After carefully considering the record of trial and the parties' extensive submissions, we find merit in the appellant's fourth AOE and grant relief in our decretal paragraph.  Having considered AOEs VII, VIII, IX and X, we find them without merit.  *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).  We are convinced that following our corrective action the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains.  Arts. 59(a) and 66(c), UCMJ.

## Factual Background

The appellant was a high school friend of Aviation Electronics Technician First Class (AT1) C and his wife, Mrs. C. Upon learning they were all stationed in the Hampton Roads, Virginia area, the appellant contacted AT1 C, first in 2003, and then after the birth of AT1 C's son, DC, in 2007.  From 2007 to 2010, the appellant interacted closely with AT1 C's family, to the extent that DC referred to him as "Uncle Brian."[2]

In January 2010, when Mrs. C entered the hospital to give birth to a second child, she and AT1 C asked the appellant to babysit DC.  The appellant was alone with the boy for extended periods over the next two days.  Mrs. C gave birth to a son on DC's third birthday.  Several days later, as Mrs. C. was lying in bed at home recovering, she watched as her husband assisted in DC's toilet training.  While AT1 C and DC were standing next to each other at the toilet urinating, DC opened his mouth wide and moved to place his mouth on his father's genitalia.  Both parents immediately told DC this was improper, to which DC replied, "Brian does that" and "Brian drinks my potty."[3]  When his parents continued to tell DC such conduct was wrong, DC adamantly repeated these statements and attempted to demonstrate by trying to place his mouth on his own penis.

Confused and in partial denial, AT1 C and his wife took no action on the boy's comments, other than agreeing to keep a closer eye on the appellant's interactions with DC.  Roughly eight weeks later, in either late February or early March 2010,

---

[2] Record at 691.

[3] *Id*. at 701-02.  At the time, DC used the term "potty" to refer equally to his penis and the act of urinating.  *Id*. at 414, 693, 746.

3

AT1 C was deployed and Mrs. C asked the appellant to watch her sons while she went shopping. The appellant was alone with DC and his brother for approximately an hour. Sometime during the next several days, Mrs. C. was in the bathroom while DC was standing at the toilet urinating. Believing she saw DC place his hand in the urine stream, she asked him whether he had done so. DC responded, "No, Brian touched my potty," and "Brian drinks my potty. Brian brushes his teeth."[4]

Mrs. C reported DC's statements the next day. A subsequent forensic interview was inconclusive, with the interviewer having difficulty in understanding DC due to the latter's delayed speech skills. In response to the interviewer's open-ended questions, DC did not mention the alleged offenses.

A year later, as Mrs. C was instructing DC on the need to report inappropriate touching, DC repeated his statement "Brian touched my potty."[5] Several months after that, when the appellant's name came up in casual conversation, DC said, "You know. The man who touched my potty and drank it."[6] DC made similar statements to a forensic interviewer shortly thereafter, in August 2011.

A subsequent search of the appellant's computers and hard drives revealed numerous photos of nude or partially clothed infants and toddlers, most taken during baths or diaper changes. At trial the military judge, over defense objection, let the Government introduce eight of these photos as evidence of the appellant's state of mind or intent.

The Government preferred the present charges two years after DC made these last statements. (The record contains no explanation for the delay in preferral). At trial, the appellant denied any inappropriate activity with DC.

Additional facts necessary to address the various AOEs will be provided below.

### DC's Out-of-Court Statements

In his first three AOEs, the appellant claims the military judge abused her discretion regarding the admissibility of AT1

---

[4] *Id*. at 706.

[5] *Id*. at 869.

[6] *Id*. at 710.

C's and Mrs. C's testimony regarding DC's statements to them. We will address these AOEs together.

Before trial, the Government filed a motion *in limine* to admit DC's statements via his parents, and the defense responded with a mirroring motion to exclude. Proffering that DC could no longer remember the events of early 2010, the Government sought the admission of DC's January 2010, March 2010, and July 2011 statements under the residual hearsay exception found in MILITARY RULE OF EVIDENCE 807, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). The parties each presented expert testimony on the motion. During this hearing, the TDC conceded that the January 2010 statements were admissible either under MIL. R. EVID. 807 or as excited utterances under MIL. R. EVID. 803(2).

The military judge, based on the Government's proffer, issued a preliminary ruling[7] admitting all three statements. Specifically, she noted the TDC's concession regarding the January 2010 statements, ruled the March 2010 statements were admissible as both excited utterances and under the residual hearsay exception, and ruled the July 2010 statements were admissible under the residual hearsay exception.

During a subsequent Article 39(a), UCMJ, hearing, DC was questioned under oath by both parties and the military judge. His answers clearly demonstrated he had no memory of either the appellant or the charged offenses. Accordingly, the military judge found DC to be unavailable under MIL. R. EVID. 804, reiterated her earlier, proffer-based ruling, and allowed DC's parents to testify to what DC said in January and March 2010, and July 2011.

*DC Unavailable*

We review a military judge's ruling on the availability of a witness for abuse of discretion. *United States v. Cabrera-Frattini*, 65 M.J. 241, 245 (C.A.A.F 2007). "So long as the military judge understood and applied the correct law, and the factual findings are not clearly erroneous, neither the military judge's decision to admit evidence, nor his unavailability ruling, should be overturned." *Id*. (citing *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004)). Among the various bases for finding a witness unavailable is when the declarant "testifies to a lack of memory of the subject matter of the declarant's statement." MIL. R. EVID. 804(a)(3).

---

[7] Appellate Exhibit XXXIV.

Here, based on DC's testimony, the military judge found that DC "has no memory of the subject matter in this case."[8]  He denied knowing an adult named Brian, and said he did not recognize the appellant, even when the latter stood before him at counsel table.  While DC claimed to remember the birth of his brother in January 2010, the military judge was not convinced that he did.  Rather, the military judge found that DC merely remembered that his brother was born on his birthday.  DC did not recall telling his parents or anyone else that he was touched by anyone.  Although the appellant is correct that DC was not asked specifically whether the appellant had ever touched his "potty," DC's testimony, taken as a whole, supports the military judge's finding that there is "absolutely no evidence that [DC] recalls the events alleged in the charge sheet," and "that his memory is exhausted."[9]

We find nothing clearly erroneous in the military judge's findings, or in her application of MIL. R. EVID. 804 to those findings.  Accordingly, we conclude she did not abuse her discretion in finding DC to be unavailable.

*DC's Statements*

During the pretrial motions hearing, the TDC conceded that, regarding DC's January 2010 statements, "there's multiple ways, [MIL. R. EVID.] 807, excited utterance, that those statements in the bathroom be allowed in."[10]  The TDC, however, did object to the admission of DC's March 2010 and July 2011 statements.  Accordingly, the military judge's decision to admit this evidence is reviewed for an abuse of discretion.  *United States v. Kasper*, 58 M.J. 314, 318 (C.A.A.F. 2003).  When testing for abuse of discretion, we examine whether the "challenged action [is] arbitrary, fanciful, clearly unreasonable, or clearly erroneous."  *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation and internal quotation marks omitted).

We first examine the admissibility of all three sets of statements under the residual hearsay exception.  If the

---

[8]  Record at 416.

[9]  *Id*. at 418.

[10]  *Id*. at 278.  Forfeited issues regarding admission of evidence are normally reviewed under a "plain error" standard.  *United States v. Eslinger*, 70 M.J. 193, 197-98 (C.A.A.F. 2011).  For simplicity's sake, we will assume the TDC objected to the January 2010 statements and review them together with the March 2010 and July 2011 statements using the lower "abuse of discretion" standard.  The result is the same.

6

statements were properly presented to the members under this exception, any objection to the military judge relying on the excited utterance exception (for the January and March 2010 statements) is necessarily moot.

The residual-hearsay exception, MIL. R. EVID. 807, applies to "highly reliable and necessary evidence." *United States v. Wellington*, 58 M.J. 420, 425 (C.A.A.F. 2003) (quoting *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A. 1991)) (additional citation omitted). "A military judge's decision to admit residual hearsay is entitled to 'considerable discretion' on appellate review." *Id*. (citation omitted).

For a hearsay statement to be admissible under this exception, it must have circumstantial guarantees of trustworthiness equivalent to the other exceptions to the hearsay rule. *Giambra*, 33 M.J. at 334; *see also Ohio v. Roberts*, 448 U.S. 56, 66 (1980). Also, "the court [must determine] that, (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." MIL. R. EVID. 807.[11]

In testing whether a statement is supported by such guarantees of trustworthiness, we will look to all indicia of reliability, including: (1) the mental state and age of the declarant; (2) the spontaneity of the statement; (3) the use of suggestive questioning; and (4) whether the statement can be corroborated. *United States v. Donaldson*, 58 M.J. 477, 488 (C.A.A.F. 2003). A military judge's findings of fact regarding circumstantial guarantees of trustworthiness are reviewed for clear error. *Id*.

The military judge's findings of fact regarding the admissibility of DC's March 2010 and July 2011 hearsay statements are summarized as follows:

(a) DC's statements were "clear, voluntary and uncontrived," without motive to fabricate, in terms appropriate to a three- and four-year-old;[12]

---

[11] The final requirement of MIL. R. EVID. 807, that the proponent must provide timely notice of intent to offer the evidence at trial, was clearly met in this case.

[12] AE XXXIV at 10.

(b) DC had "no reason to believe anything was wrong" and "no way of knowing the ramifications of his statement;"[13]

(c) All of DC's statements were spontaneous and consistent; and,

(d) The statements were not the result of suggestive questioning. The January 2010 and March 2010 statements occurred before Mrs. C. questioned DC concerning whether the appellant had touched him, and DC made the July 2011 statements more than a month after his mother had last raised the issue of inappropriate touching. Expert testimony indicated DC was not susceptible to suggestion, and less likely than most children to "acquiesce to a version of events different than [his] own."[14]

The military judge did not consider whether the statements could be corroborated, relying instead on the totality of the other indicia of reliability listed.

Upon review of the record, we find nothing clearly erroneous in the military judge's findings of fact. We similarly find no error in her application of these facts to the law. Accordingly, we conclude the appellant's claims that DC's hearsay statements were erroneously admitted under the residual hearsay exception are without merit.[15]

### Factual Sufficiency

Under Article 66(c), UCMJ, we conduct a *de novo* review of factual sufficiency of each case before us. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are ourselves convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "Such a review involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *Washington*, 57 M.J. at 399. Proof beyond a

---

[13] *Id.*

[14] *Id.* at 11.

[15] As noted above, this ruling on the appellant's second AOE moots his third.

reasonable doubt does not mean, however, that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001).

*Specifications 1 and 2 – January 2010*

The elements of aggravated sexual abuse of a child are: (a) that the accused engaged in a lewd act, and (b) that the act was committed with a child who had not attained the age of 16 years. Article 120(f), UCMJ. At trial, the Government had the burden of proving both of these elements beyond a reasonable doubt. "The testimony of only one witness may be enough to meet this burden so long as the members find that the witness's testimony is relevant and is sufficiently credible." *United States v. Rodriguez-Rivera*, 63 M.J. 372, 383 (C.A.A.F. 2006).

As the evidence of DC's age was clear and uncontested, we focus on the first element. The appellant was convicted of two separate specifications, one of placing DC's penis in his mouth and another of touching DC's penis with his hand. Considering the entire record, particularly the circumstances in which DC made the statements, their spontaneous and consistent nature, DC's use of age-appropriate terms, his attempt to demonstrate for his parents, and the lack of any indication that he made the statements in response to suggestive questioning, we find the Government has met its burden on these two specifications. We acknowledge the lack of corroborating evidence and the appellant's denial of the charged offenses; nevertheless, we are convinced of the appellant's guilt beyond a reasonable doubt.

*Specifications 3 and 4 – March 2010*

We are not, however, similarly convinced as to the remaining specifications. Among the elements of indecent liberty with a child are that the accused committed an indecent act or communication in the presence of a child. Specifications 3 and 4 allege acts similar to those found in the first two specifications, but on a later date. Other than the fact DC made statements following the day the appellant babysat him in March, there is no evidence to indicate DC was referring to any event outside the period alleged in Specifications 1 and 2. DC did not tell his mother that the appellant "drank his potty again," or "just like last time." He merely repeated his allegations that the appellant "touched" and "drinks" his "potty."[16] Similarly, DC's July 2011 statements offer nothing to

---

[16] Record at 706.

indicate the appellant improperly touched him on more than one occasion in 2010.

While the military justice system acknowledges the difficulties in proving allegations based on the uncorroborated statements of children, the presence of a child victim in a case in no way relieves the Government of its burden of proof. The evidence here shows the triggering event for DC making his March 2010 statements was his mother questioning him about touching his urine. Neither the questions nor the response provide any temporal framework. As it is equally likely DC was describing the appellant's lewd acts in January, and not a separate incidence of indecent liberties in March, we cannot conclude that the Government has proven the appellant's guilt of Specifications 3 and 4 beyond a reasonable doubt.

### Expert Testimony

As part of its case-in-chief, the Government offered two experts, Ms. Thames and Ms. Killips. Ms. Thames initially interviewed DC in March of 2010, but was unable to understand his responses. When she re-interviewed him in August 2011, she still had difficulty, but could understand most of what DC said. She noted that DC would correct her as she repeated his words back to him. Ms. Thames testified this indicated DC was resistant to suggestibility. Ms. Killips did not interview DC, but did review recordings of his interviews with Ms. Thames, as well as the statements and testimony of DC's parents. She testified regarding disclosure patterns of child victims of sexual abuse and that she, too, believed DC was resistant to suggestibility.

*Human Lie Detector Evidence*

The appellant claims that this testimony amounted to the two experts acting as human lie detectors. As the TDC did not object to this testimony, we review the military judge's decision to admit the testimony for plain error. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014). The appellant has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights. *Id*. at 36. "An obvious error materially prejudices the substantial rights of the accused when it has 'an unfair prejudicial impact on the [court members'] deliberations.'" *Id.* at 37 (quoting *United States v. Powell*, 49 M.J. 460, 463 (C.A.A.F. 1998)) (alteration in original) (additional citation omitted).

10

"It is the 'exclusive province of the court members to determine the credibility of witnesses.'" *Id.* at 34 (quoting *United States v. Brooks*, 64 M.J. 325, 328 n.3 (C.A.A.F. 2007)). The appellant argues that the experts' opinions regarding DC's resistance to suggestibility were equivalent to saying DC was being truthful in his allegations. We disagree. Ms. Thames' brief testimony was confined to her opinion on suggestibility. She did not offer any opinion regarding DC's credibility. When asked whether she thought the memories recounted by DC during the August 2011 were in fact his, she said she "[couldn't] say one way or the other."[17] Furthermore, when a member indicated a desire to know Ms. Thames' opinion on this point, the military judge refused to ask the question. While Ms. Killips' testimony was somewhat more involved, she, likewise, did not offer an opinion as to DC's credibility.

After Ms. Thames' testified, the military judge asked whether either party wished her to give "an instruction to the members . . . reminding them that credibility's for them to determine?"[18] Both the Government and defense clearly indicated they did not want such an instruction given at that time. At the conclusion of Ms. Killips' testimony, however, the military judge instructed the members as follows:

> I just want to remind you that only you, the members of the court, determine the credibility of the witnesses and what the facts of this case are. No expert witness, or other witness, can testify that the alleged victim's account of what occurred is true or credible, that the expert or another witness believes . . . the alleged victim or another witness, or a sexual encounter occurred. [Those], of course, are factual issues and those are within your purview as the panel in this case.[19]

At the conclusion of the presentation of evidence, the military judge provided a nearly identical instruction to the members. She also instructed them that, "[t]o the extent that you believe that Ms. Killips testified or implied that she believes the alleged victim, his parents, or that a crime occurred, or that they are credible, you may not consider this

---

[17] *Id.* at 789.

[18] *Id.* at 808.

[19] *Id.* at 846.

11

as evidence that a crime occurred or that they are, in fact, credible."[20]  The military judge gave no such instruction regarding Ms. Thames.

Considering the testimony and instructions together, we find no error, plain or otherwise.  We do not find the testimony of either expert to constitute human lie detector testimony. Even were we to assume the members interpreted the testimony as a comment on DC's credibility, we are confident the military judge's instructions properly resolved the matter.  That neither instruction specifically referred to Ms. Thames is of no import. The appellant argues that the fact a member asked Ms. Thames to opine on DC's credibility should have alerted the military judge that at least one member was "focused in on" the issue.[21]  While we certainly hope the members were focused on the question of DC's credibility—it being the central issue in the Government's case—we see this member's question only as further evidence that Ms. Thames had not already provided the opinion sought.  Thus, we see no error, let alone plain or obvious error, in the military judge not providing a limiting instruction immediately after Ms. Thames testified or specifically mentioning her in the charging instructions.

*Testimonial Hearsay*

The appellant next claims the military judge abused her discretion in allowing the experts to provide testimonial hearsay.  We disagree.

Whether a statement constitutes testimonial hearsay is a question of law which we review *de novo*.[22]  *United States v. Squire*, 72 M.J. 285, 288 (C.A.A.F. 2013).  "The Confrontation Clause bars the 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'"  *United States v. Rankin*, 64 M.J. 348, 351 (C.A.A.F. 2007) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).  Factors to consider in determining whether a

---

[20] *Id.* at 993.

[21] Appellant's Brief of 18 Feb 2015 at 73.

[22] When trial defense counsel fails to object to such evidence, we will normally review for plain error.  But, in light of AOE VIII (claiming ineffective assistance of counsel for failing to object to testimonial hearsay), we will examine this issue by assuming such an objection was made at trial.  The result is the same.

statement is testimonial include whether: "(1) the statement was elicited by or made in response to law enforcement or prosecutorial inquiry; (2) the statement involved more than a routine and objective cataloging of unambiguous factual matters; and (3) the primary purpose for making, or eliciting, the statement was the production of evidence with an eye toward trial." *Squire*, 72 M.J. at 288 (citing *United States v. Gardinier*, 65 M.J. 60, 65 (C.A.A.F. 2007) and *Rankin*, 64 M.J. at 352).

Where evidence is erroneously admitted in violation of the Confrontation Clause of the Sixth Amendment, our review must "determine whether the error is harmless beyond a reasonable doubt." *United States v. Gardinier*, 67 M.J. 304, 306 (C.A.A.F. 2009) (citation omitted). In doing so, we look to the factors set forth in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986), namely, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (Citations omitted).

Ms. Thames did not testify on direct examination regarding any statements made by DC during her August 2011 forensic interview of him. During examination by the court, however, the military judge allowed a member to ask her, "what specifically did [DC] allege as the maltreatment?"[23] She responded, "[DC] said that Brian touched his potty and drank his potty."[24]

Ms. Killips' testimony was, in part, based upon her reviewing recordings of both Ms. Thames' August 2011 interview with DC and an earlier conversation between DC and his mother. In discussing how suggestibility may influence children, she described how Ms. Thames did not use leading or suggestive questions in her interview. But Ms. Killips then described how DC's parents' response to his initial disclosures—that "this is nasty, this is yucky, we don't do that"[25]—may have affected DC's statements to Ms. Thames. As an example, she stated that, while "there was no expansion of the disclosure [,] . . . by the last

---

[23] Record at 812; AE LIII.

[24] *Id.*

[25] *Id.* at 829.

13

interview [DC was] saying that this was disgusting.  I didn't want it.  I said no[.]"[26]

The evidence leaves no doubt that these statements by DC, made during a forensic interview with Ms. Thames, did not involve merely the "routine and objective cataloging of unambiguous factual matters."  Instead, the statements were central to the allegation and were elicited for the purpose of creating evidence with an eye toward prosecution.  This is evidenced by Ms. Thames' description of her child advocacy center as a "one stop shop for child abuse investigations," "created so that children aren't asked to go from law enforcement to social services to prosecutor."[27]  Accordingly, we find that DC's statements as recounted by both Ms. Thames and Ms. Killips constituted testimonial hearsay, and that admission of this testimony was error.  We must, therefore, now look to see whether the error is harmless beyond a reasonable doubt.

Applying the *Van Arsdall* factors, we find:

(1) While the experts' testimony likely aided the members in understanding the dynamics of child reporting, the critical evidence in this case was the statements and actions described by DC's parents.  The expert's recitation of DC's statements was certainly not central to the expert's testimony.  In fact, Ms. Killips only used DC's statements as an example to prove her point about the effect of blaming and suggestibility on such reports.  If anything, her testimony demonstrated the *un*trustworthiness of DC's later statements.

(2) The expert's testimony was cumulative with the testimony of both AT1 C and his wife.  Although Ms. Killips' testimony included statements by DC that the court had not otherwise heard, they were not offered to show what DC said, but rather to demonstrate the effect of suggestibility on DC's later description of events.

(3) The statements relayed by the experts are uncorroborated, except to the extent it was uncontested that the appellant had spent time alone with DC immediately before DC reported.  The statements are contradicted only by the appellant's testimony.

---

[26] *Id.*

[27] *Id.* at 778.

14

(4) The trial defense counsel was allowed to cross-examine both Ms. Thames and Ms. Killips at length.  Ms. Thames admitted that it was possible DC's statements were influenced by his parents' questioning, and that she "can't say one way or the other" that the memories DC described in the August 2011 interview were his.[28]  Likewise, Ms. Killips conceded under cross-examination that she did not know what conversations may have occurred between DC and his mother before the August 2011 interview.

(5) In general, the Government faces a difficult burden in proving guilt based solely on a young child's testimony.  In this case, however, the Government's case was strengthened by the circumstances in which DC reported the appellant's actions, including DC's attempts to demonstrate for his parents.  That the members heard DC's statements an additional time or two is of minimal importance when compared to the circumstances of DC's reports as described by DC's parents.

Taking all of these factors into consideration, we are convinced that any error in admitting the expert's testimony was harmless beyond a reasonable doubt.

## Sentence Reassessment

As we conclude the finding of guilt as to Specifications 3 and 4 cannot stand, we will reassess the sentence in accordance with the principles set forth in *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006), *United States v. Cook*, 48 M.J. 434, 438, (C.A.A.F. 1998), and *United States v. Sales*, 22 M.J. 305, 307-09 (C.M.A. 1986).  After being instructed the maximum punishment they could impose was "reduction to the grade of E-1, forfeiture of all pay and allowances, confinement for a period of 35 years and a dishonorable discharge,"[29] the members sentenced the appellant to confinement for six years and a dishonorable discharge.  While our holding reduces the maximum period of confinement to 20 years and effectively reframes the appellant's misconduct as a one-time event, thereby presenting a "dramatic change in the penalty landscape," *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States*

---

[28] *Id*. at 789.

[29] *Id*. at 1099.  The military judge had previously ruled that the four specifications represented an unreasonable multiplication of charges for sentencing purposes, and merged Specification 1 with Specification 2 and Specification 3 with Specification 4 for sentencing purposes.

15

*v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)), this change does not preclude our ability to reassess the sentence in this case.

Certainly the fact the appellant stands convicted of only once sexually assaulting a child, and not doing so multiple times, is significant. However, whether it was one or two occasions, the charged misconduct was essentially the same. Also, in its sentencing argument, the Government did not draw attention to the fact the members found the appellant guilty of misconduct with DC both times he was left alone with him. Rather, trial counsel dealt with the two events in a combined, general sense. Finally, the great difference between the maximum punishment and adjudged sentence indicates the members were not influenced by the erroneous, higher maximum upon which they were instructed. Accordingly, we conclude that the members would have imposed a sentence nearly as severe for one act as they did for two. We are convinced they would have imposed a sentence of no less than four years' confinement and a dishonorable discharge. We further conclude such a sentence is appropriate in this case.

## Conclusion

The findings of guilty to Specifications 3 and 4 of the Charge are set aside. Specifications 3 and 4 are dismissed.[30] The remaining findings of guilty as to the Charge and Specifications 1 and 2, and only so much of the sentence as includes four years' confinement and a dishonorable discharge, are affirmed.

Senior Judge BRUBAKER and Judge MARKS concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[30] We note the promulgating order omits any mention of Specification 4. While such a glaring omission would normally require remand for new post-trial processing, our action regarding Specifications 3 and 4 makes the issue moot. Regardless, that this obvious error could have escaped detection by the staff judge advocate and both appellate counsel causes this court great concern.