# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2022-01**

————————————

**In re Gregory P. BANKER**
*Petitioner*

————————————

Petition for Extraordinary Relief in the Nature of a Writ of Coram
Nobis

Decided 6 February 2023

————————————

*Military Judge:* Gregory E. Pavlik.

*Approved Sentence:* Bad-conduct discharge, confinement for 2 years, and
reduction to E-1. Sentence adjudged 9 February 2001 by GCM convened
at Sheppard Air Force Base, Texas.

*For Petitioner:* Major Kasey W. Hawkins, USAF.

*For Respondent:* Major John P. Patera, USAF; Major Brittany M. Speirs,
USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military
Judges.*

Judge RICHARDSON delivered the opinion of the court, in which Judge
CADOTTE joined. Senior Judge POSCH filed a separate opinion concur-
ring in the result in part, and dissenting in part.

————————————

**This is an unpublished opinion and, as such, does not serve as
precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Judge:

On 26 January 2022, Petitioner filed with this court a Petition for Extraor-
dinary Relief in the Nature of a Writ of Error Coram Nobis. The petition was
docketed with the court the next day. The petition included, *inter alia*, an affi-

davit from Petitioner about the lingering effects of his conviction and its collateral consequences, and an affidavit from the named victim in Petitioner's court-martial, LG. In that affidavit, LG recanted her trial testimony that supported the offenses of which Petitioner was convicted. Petitioner requests this court issue "a writ of error coram nobis setting aside his 9 February 2001 conviction, as it was based on false testimony." Alternatively, Petitioner suggests that if the court is unable to determine LG's credibility, it remand for a hearing in accordance with *United States v. DuBay,* 37 C.M.R. 411 (C.M.A. 1967).

# I. BACKGROUND

On 9 February 2001, Petitioner was convicted at a general court-martial composed of officer and enlisted members at Sheppard Air Force Base, Texas. LG testified as the primary government witness. Contrary to his pleas, Petitioner was found guilty of sodomy with a child under the age of 16 years on divers occasions and sodomy on divers occasions, in violation of Article 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 925; and indecent acts with a child under the age of 16 years on divers occasions, indecent acts with another on divers occasions, and adultery on divers occasions, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1,2] The court members sentenced Petitioner to a bad-conduct discharge, confinement for two years, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

For our initial review of his case under Article 66, UCMJ, 10 U.S.C. § 866, *Manual for Courts-Martial* (2000 ed.), Petitioner raised three issues as an appellant on direct review: (1) legal and factual sufficiency of the evidence on all convicted offenses, (2) the military judge's ruling under Mil. R. Evid 412 preventing Petitioner from offering evidence of LG's motive to fabricate, and (3) the admission of a stipulation of expected testimony of Petitioner's psychologist. This court found some merit in the first issue, and no error in the remaining issues. On 8 October 2002, it modified the specification of indecent acts with a child and set aside the finding of guilty to the specification of indecent acts with another. *United States v. Banker*, 57 M.J. 699, 706 (A.F. Ct. Crim. App. 2002). It also reassessed Petitioner's sentence, and affirmed the approved sentence. *Id.* The United States Court of Appeals for the Armed Forces (CAAF) considered whether this court or the military judge erred in its resolution of the Mil. R. Evid. 412 issues. *United States v. Banker,* 58 M.J. 245 (C.A.A.F.

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (1995 ed.).

[2] Petitioner was found not guilty of carnal knowledge under Article 120, UCMJ, 10 U.S.C. § 920.

2003). The CAAF did not find error, but on 23 August 2004 remanded Petitioner's case to this court to consider a supplemental issue.[3] *United States v. Banker*, 60 M.J. 216, 225 (C.A.A.F. 2004). Petitioner requested the CAAF reconsider its decision; on 4 January 2005 the CAAF denied that request. *United States v. Banker*, 60 M.J. 452 (C.A.A.F. 2005).

Petitioner's case came before this court a second time to consider the supplemental issue CAAF specified, along with two issues this court specified.[4] On 29 June 2006, this court found no relief was warranted for these additional issues, and came to the same conclusions regarding legal and factual sufficiency and sentence reassessment as it had in its initial review. *United States v. Banker*, 63 M.J. 657, 661 (A.F. Ct. Crim. App. 2006), *aff'd,* 64 M.J. 437 (C.A.A.F. 2007). Specifically, it modified the specification of indecent acts with a child and set aside the finding of guilty to the specification of indecent acts with another, and found Petitioner would have received the same sentence as that adjudged, which it further found was appropriate. *See id.*

On 20 February 2007, the CAAF granted Petitioner's petition for review, and then affirmed this court's 29 June 2006 decision. *United States v. Banker*, 64 M.J. 437 (C.A.A.F. 2007). On 25 June 2007, the United States Supreme Court denied Petitioner's petition for writ of certiorari. *Banker v. United States*, 551 U.S. 1147 (2007). On 30 October 2008, the convening authority ordered the bad-conduct discharge executed.

Petitioner's case is now before this court as a petition for extraordinary relief in the nature of a writ of error coram nobis for the reasons stated above. Upon review of the petition, this court ordered the Government to show cause not later than 31 March 2022 why Petitioner's requested relief should not be granted. The Government responded on that date and opposed the requested writ, but did not address the Petitioner's alternative request for a *DuBay* hearing. In response to another order from this court, on 12 April 2022 the Govern-

---

[3] The CAAF specified the following issue: Whether the appellant's conviction for violating Article 125, UCMJ, 10 U.S.C. § 925, by engaging in consensual sodomy must be set aside in light of *Lawrence v. Texas*, 539 U.S. 558 (2003). *United States v. Banker*, 60 M.J. 216, 225 n.6 (C.A.A.F. 2004).

[4] On 20 April 2005, this court specified the following additional issues: (1) Whether the disparity in age between the victim and the appellant, as well as the appellant's prior grooming of the victim to engage in sexual conduct while she was under the age of consent, placed the victim in a relationship where consent might not easily be refused in light of *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004), and whether the court should apply an objective or subjective test in answering this question; and (2) Whether a 16-year-old is a minor in the context of *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472 (2003).

ment responded, opposing such hearing. Petitioner replied to the Government's responses on 19 April 2022. Petitioner submitted an additional affidavit, which he signed on 18 April 2022, asserting his innocence and denying he made statements to anyone that he had a sexual or otherwise inappropriate relationship with LG.

Petitioner argues we should issue the writ because (1) we have jurisdiction, (2) issuance is "necessary and appropriate," and (3) "there are sufficient grounds to grant a new trial due to fraud upon the court."[5] Petitioner asserts that "[i]n this case, where LG's testimony was the only evidence of Petitioner's guilt, and no physical evidence corroborated her testimony, there is sufficient basis for this Court to grant the writ, however a *DuBay* hearing is appropriate if necessary for this Court to adequately assess LG's credibility." The Government opposes issuance of the writ, and asserts this court "can adequately assess the credibility of LG's recantation without a *DuBay* hearing" based on the evidence in the record. The Government added:

> Petitioner has not pointed to any other evidence that might be developed at a *DuBay* hearing that would bolster LG's late recantation. As a result, a *DuBay* hearing would merely feature LG's new protestations that nothing happened being impeached and contradicted by LG's multiple pretrial statements to OSI and others, her Article 32[, UCMJ,] and original trial testimony, and Petitioner's own admissions that a sexual relationship had occurred. It would be further impeached by the immutable fact that LG waited more than 16 years to indicate her willingness to recant, and then another four-and-a-half years to execute her affidavit.

(Footnote omitted).

## II. LAW AND ANALYSIS

The All Writs Act, 28 U.S.C. § 1651(a), grants this court authority to issue extraordinary writs. *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999)). "The writ of coram nobis is an ancient common-law remedy designed 'to correct errors of fact.'" *United States v. Denedo*, 556 U.S. 904, 910 (2009) (quoting *United States v. Morgan*, 346 U.S. 502, 507 (1954)). Appellate military courts have jurisdiction over "coram nobis petitions to consider allegations that an earlier judgment of conviction was flawed in a fundamental respect." *Id.* at 917. The writ of coram nobis is an extraordinary writ and an extraordinary remedy. *Id.* It should not

---

[5] The Government agrees with (1)—that this court has jurisdiction to consider the Petition—but disagrees with (2) and (3).

be granted in the ordinary case; rather, it should be granted only under circumstances compelling such action to achieve justice. *Id.*; *Morgan,* 346 U.S. at 511; *Correa-Negron v. United States*, 473 F.2d 684, 685 (5th Cir. 1973). "Recantations of trial testimony are viewed by federal courts with extreme suspicion." *United States v. Rios*, 48 M.J. 261, 268 (C.A.A.F. 1998) (internal quotation marks and citations omitted).

Although a Petitioner may file a writ of coram nobis at any time, to be entitled to the writ he must meet the following threshold requirements:

> (1) the alleged error is of the most fundamental character; (2) no remedy other than coram nobis is available to rectify the consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist.

*Denedo v. United States*, 66 M.J. 114, 126 (C.A.A.F. 2008), *aff'd*, 556 U.S. 904 (2009).

"This court uses a two-tier approach to evaluate claims raised via a writ of coram nobis. First, [P]etitioner must meet the aforementioned threshold requirements for a writ of coram nobis. If [P]etitioner meets the threshold requirements his claims are then evaluated under the standards applicable to his issues." *Chapman v. United States*, 75 M.J. 598, 601 (A.F. Ct. Crim. App. 2016) (citing *Denedo*, 66 M.J. at 126).

We have the authority to order a post-trial fact-finding hearing. *See* Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3); *United States v. Ginn*, 47 M.J. 236, 242 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. at 413. Upon careful review of the record, we conclude a fact-finding hearing is appropriate to address two coram nobis threshold requirements, specifically *Denedo* factors (3) and (4). We allow that in consideration of the *Denedo* factors, evidence relating to LG's veracity and Petitioner's underlying request may be revealed. However, at this time we do not request findings of fact on the merits of Petitioner's request for a new trial.

### III. CONCLUSION

The record of trial is returned to The Judge Advocate General for referral to an appropriate convening authority for the purpose of promptly directing a

post-trial hearing in accordance with *DuBay*, 37 C.M.R. at 413. A detailed military judge conducting the hearing shall address *Denedo* factors (3) and (4), and specifically the following issues:

(1) The circumstances surrounding LG's recantation(s) of her testimony from Petitioner's court-martial, including when Petitioner learned that LG was recanting. (*Denedo* factor (3)).

(2) The circumstances leading to Petitioner filing his Petition for Extraordinary Relief in the Nature of a Writ of Error Coram Nobis in January 2022, nearly 21 years after his conviction. (*Denedo* factor (3)).

(3) The circumstances relating to LG's 28 October 2021 affidavit statement[6] that LG would have admitted her allegations were untrue to any investigator or participant to the court-martial, had she been asked directly, before Petitioner was convicted. (*Denedo* factor (4)).

The military judge will be provided with the record of trial and all appellate pleadings in this case. The military judge has broad authority to hear testimony and receive evidence, and may require the presence—including via virtual means—of any witnesses deemed necessary.

At the conclusion of the hearing, the military judge will prepare written findings of fact on *Denedo* issues (3) and (4) only. We recognize the military judge has broad but not unlimited authority over the control of the courtroom, docketing, and rulings on continuances. *See United States v. Bowser*, 73 M.J. 889, 896 (A.F. Ct. Crim. App. 2014) (citations omitted), *aff'd*, 74 M.J. 326 (C.A.A.F. 2015) (mem.). Allowing for such matters, we find four months a sufficient period of time for the military judge to hold the post-trial hearing and complete written findings of fact.

Therefore, we require the Government to provide the military judge's written findings of fact to this court **not later than 6 June 2023**. Additionally, we require the Government to return the record of the post-trial hearing to this court for further review **not later than 30 days** after the military judge has completed the written findings of fact. Counsel for the Government shall promptly notify this court of any decisions of the military judge regarding docketing or continuances that may impact the ability of the Government to return the matters to this court by these deadlines.

Petitioner may file a brief addressing the military judge's written findings of fact not later than 14 days following the court's receipt of the record of the

---

[6] Specifically, LG states, "During the trial, on cross-examination, I admitted that I had provided inconsistent and false statements to investigators, but I never directly was asked or made [Petitioner's] defense counsel aware that my allegations were false."

post-trial hearing. The Government may file an answer brief not later than 14 days after the filing of Petitioner's brief.

POSCH, Senior Judge (concurring in the result in part, and dissenting in part):

Petitioner has the burden to demonstrate a clear and indisputable right to the extraordinary relief he requests. *Denedo v. United States*, 66 M.J. 114, 126 (C.A.A.F. 2008) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004)), *aff'd and remanded*, 556 U.S. 904 (2009). I agree with my colleagues' decision to order further proceedings before the court may settle his petition and resolve whether his substantive claim on the merits warrants setting aside the findings and sentence. For this reason I join my colleagues in the decision to order an evidentiary hearing.

I write separately for two reasons: first, to explain why a factfinding hearing on *Denedo* factors (3) and (4) is not only appropriate, but that it is necessary under applicable precedent and the circumstances present here. Put differently, the court is correct to order factfinding not because we can, but because we must. For this reason I concur with ordering the *DuBay*[1] judge to fully evaluate *Denedo* factors (3) and (4), and conduct factfinding on both issues. However, I dissent in part because our order does not afford latitude to the *DuBay* judge that would allow this court to evaluate *Denedo*'s second tier of analysis— that is, the question of the merits of LG's recantation and whether she told the truth before, or is telling the truth now. It is not too soon to inquire into the veracity of LG's trial testimony and recantation.

Therefore, I respectfully dissent not because our order is incorrect, but because it is too narrow in scope. On further review of the petition, should Petitioner establish all six requirements of the first tier, we may discover that we need additional factfinding to resolve the second. To be sure, on further review we may discover Petitioner fails in his burden to satisfy what our superior court has described as the "stringent" requirements of the first tier, *id.*, and that will surely end this matter. However, to avoid the potential for piecemeal litigation, the *DuBay* judge should not be so constrained. It is in the interests of judicial economy and efficiency to inquire into the question of LG's veracity, which would allow the court to fully evaluate the petition on further review.

Those interests are especially meaningful considering the significance of Petitioner's claim, belated as it may be as his timing stands in relation to his February 2001 court-martial. Petitioner asks this court to issue a writ of error coram nobis on grounds that each of his five convictions were a result of per-

---

[1] *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam).

jured testimony LG gave at his court-martial. Alternatively, Petitioner suggests that if the court is unable to determine the truthfulness of LG's recantation, then we should direct an evidentiary hearing in accordance with *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). The Government contends that Petitioner fails to satisfy all six requirements in the first tier of coram nobis analysis. *See Denedo*, 66 M.J. at 126. The Government posits, also, that Petitioner would not be entitled to relief if this court reached the second tier of analysis—that is, the question of the merits of LG's recantation as it may bear on her pretrial and trial testimony.

Contending that the petition fails the first tier, the Government argues the petition is "inadequate on its face" and, therefore, a *DuBay* hearing is unnecessary. For support, the Government cites *United States v. Campbell*, 57 M.J. 134, 138 (C.A.A.F. 2002) (remanding petition for extraordinary relief for Court of Criminal Appeals (CCA) to determine whether an evidentiary hearing is warranted). Alternatively, the Government urges the court to find that factfinding is unnecessary because the petition is "conclusively refuted as to the alleged facts by the files and records of the case." *Id.* As to both contentions, I disagree.

## A. Alleged Error of a Most Fundamental Character

To evaluate a petition for a writ of error coram nobis, the United States Court of Appeals for the Armed Forces (CAAF) uses a two-tiered approach. *Denedo*, 66 M.J. at 126. As mentioned by my colleagues, the first tier requires a petitioner to meet all six aforementioned *Denedo* requirements for a writ of coram nobis. If the petitioner meets all six, then the second tier allows his claim to be evaluated under the standards applicable to his issue.

Among the six requirements under the first tier is that "the alleged error is of the most fundamental character." *Id.* Because additional factfinding is not warranted if Petitioner could not meet this legal standard, a suitable initial inquiry is to answer the question whether deliberately false testimony is an alleged error of the most fundamental character. In my view, Petitioner has shown that it may qualify as such.

### 1. Additional Background

#### a. Proceedings at Court Martial and Automatic Review

The background facts of Petitioner's general court-martial deserve mention here. In December 1994, Petitioner and his wife hired LG as the babysitter for their two children. LG was 14 years old at that time. LG watched Petitioner's children once or twice a month until March 1996 when she became a full-time babysitter for the family. LG was a caregiver for the children after school and during full-time breaks from school. On any given day LG could be at Petitioner's home from 0700 until 2200. LG stopped babysitting in July 1999.

In February 2001, a panel of officer and enlisted members found Petitioner guilty of sexual misconduct with LG when she was under the age of 16 years. Before trial, Petitioner moved unsuccessfully to offer evidence of LG's past sexual behavior with MB, Petitioner's son. In a closed hearing under Mil. R. Evid. 412, MB, who was 13 years old at the time of the hearing, testified that LG sexually molested him, and that it continued until LG stopped babysitting.

The first time MB told anyone about the molestations was in March 2000 during a counseling session with a psychotherapist. In one of those sessions, MB asked his counselor to report to police what LG had done to him. Petitioner and his wife had sought professional counseling for their son when they learned of certain inappropriate sexual behaviors he engaged in with others.

LG elected to be present at the Mil. R. Evid. 412 hearing, and also testified at that hearing.[2] She denied that she engaged Petitioner's son in sexual activity as alleged by the son. During that hearing, Petitioner argued that evidence given by MB in the closed session was relevant to attack LG's credibility at trial because it showed her motive to fabricate the allegations against him. Petitioner argued that exclusion of MB's testimony would violate his constitutional right to present a defense. The military judge ruled the evidence was not relevant because it did not suggest a motive to fabricate. As support for this ruling, the military judge relied on the fact that LG made allegations against Petitioner about eight months before MB made allegations against LG. Finding MB's testimony irrelevant, the military judge ruled that it was "clearly not constitutionally required under these circumstances." *United States v. Banker*, 57 M.J. 699, 702 (A.F. Ct. Crim. App. 2002), *remanded on other grounds*, 60 M.J. 216 (C.A.A.F. 2004).

Petitioner appealed his convictions and this court affirmed.[3] *Id.* at 706. In our decision this court observed that Petitioner had the burden to show the "constitutionally required relevance" of his son's testimony that the son was a victim of sexual abuse by LG. *Id.* at 704 (quoting *United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998)). Relying on this standard, a three-judge panel of this court concluded that Petitioner failed to "me[e]t his burden of showing why the prohibition in Mil. R. Evid. 412 should have been lifted." *Id.* The panel agreed with the military judge that MB's testimony was "irrelevant," *id.* (citing Mil. R. Evid. 401, 402), noting that "even if there may have been relevance to the evidence, that relevance was so tenuous as to not require its admission." *Id.* Thus, the panel held the military judge did not abuse his discretion in re-

---

[2] LG was 20 years old in February 2001 when she testified.

[3] This court approved the findings, as modified, and sentence, as reassessed. *Banker*, 57 M.J. at 706.

fusing to allow Petitioner to use MB's testimony to defend against the five offenses in which LG was a named victim. *Id.* In reaching this result, the opinion included the following findings, which included findings of fact:[4]

> The son's claims were a desperate attempt to save his father by attacking the character of LG. Even were we to give any credence to the son's allegations, *we fail to see how [LG's] behavior provides a motive for LG to fabricate.* If [MB's] allegations are true, [LG's] behavior [with MB] is likely a by-product of [Petitioner]'s sexual abuse of LG, not evidence that she is a liar.[5]

*Id.* (emphasis added).

On appeal to the CAAF, our superior court acknowledged that Petitioner sought to admit evidence on the basis that its exclusion under Mil. R. Evid. 412 would violate his constitutional rights. *United States v. Banker*, 60 M.J. 216, 221 (C.A.A.F. 2004), *cert. denied*, 551 U.S. 1147 (2007). The court described this exception to the rule as one that is rooted in "relevance and constitutional necessity," specifically "an accused's Sixth Amendment[6] right of confrontation and Fifth Amendment[7] right to a fair trial." *Id.* (citation omitted). Ultimately, the court concluded that Petitioner did not meet his burden to prove why the Mil. R. Evid. 412 prohibition should be lifted. *Id.* at 225.

At the CAAF, Petitioner argued for the first time "that LG fabricated allegations against him in order to preemptively discredit any allegations that MB might ultimately have made regarding LG's sexual conduct with MB." *Id.* at 224. This more detailed contention enlarged upon Petitioner's theory as to LG's motive that he related in his pretrial motion. In that motion, Petitioner "stated only that MB's testimony went 'directly to [LG's] credibility and motive to fabricate.'" *Id.* In denying relief, the CAAF relied on the determination that "Appellant's proffer" and his "cursory argument" below was inadequate "to show

---

[4] Several years after this court's decision in *Banker*, the CAAF observed, "Unlike most intermediate appellate courts and [the CAAF], the Court of Criminal Appeals has fact-finding powers." *United States v. Cendejas*, 62 M.J. 334, 342 (C.A.A.F. 2006) (citing Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000)).

[5] The military judge similarly found a "serious question" as to the son's veracity. *United States v. Banker*, 60 M.J. 216, 224 (C.A.A.F. 2004). He attributed MB's "lack of credibility" to "the circumstances under which this was disclosed after [MB], himself was in trouble." *Id.* The military judge "assume[d] for the purpose of the motion that the allegations that [MB] makes are true." *Id.* On this point, the CAAF concluded that, "while expressing reservations about the veracity of MB's putative testimony, the [military] judge correctly identified credibility as an issue for the members." *Id.*

[6] U.S. CONST. amend. VI.

[7] U.S. CONST. amend. V.

support for his theory." *Id.* Accordingly, the CAAF concluded that "it was within the [military] judge's discretion to determine that such a cursory argument did not sufficiently articulate how [MB's] testimony reasonably established a motive to fabricate." *Id.* at 225.

### b. LG's Recantation

In an affidavit LG acknowledged before a notary public on 28 October 2021, LG recanted material parts of her pretrial statements and trial testimony. With regard to her testimony that supported elements of each of the five offenses of which Petitioner was convicted, she stated "[t]his testimony is false, and the event did not occur." LG claims she made multiple attempts to tell her family and investigators that her allegations were false. She asserts her "recantations were not believed" and that she was "intimidated and coerced to cooperate." She attributes her willingness at the time to participate in Petitioner's prosecution to being a young, "immature, nineteen-year-old," who "felt pressured to participate in [Petitioner]'s criminal investigation by the Government, law enforcement, and [her] family."

LG articulated her motive at the time to contrive false allegations. In her telling, she

> engaged in behaviors with [Petitioner's and his wife's] minor child, [MB]. [She] was concerned [about] that information being discovered and worried about the repercussions. [She] wanted to provide a credible story to demonstrate why [she] would no longer be at [Petitioner]'s home. [She] therefore made a false claim that [she] had engaged in a sexual relationship with [Petitioner]. [Her] mother initiated the claim based on [her] false accusation.

LG stated that at the time she swore to the affidavit, she was represented by counsel, and that she was making that affidavit against her attorney's advice.

### 2. Law and Analysis

The writ of error coram nobis "allows military courts to protect the integrity of their dispositions and processes by granting relief from final judgments." *Denedo*, 556 U.S. at 916. It is available upon a showing "that there were *fundamental flaws* in the proceedings leading to their issuance." *Id.* (emphasis added). When granted, the writ "is extraordinary relief predicated upon exceptional circumstances not apparent to the court in its original consideration of the case." *United States v. Frischholz*, 36 C.M.R. 306, 309 (C.M.A. 1966) (internal quotation marks and citation omitted). It is a means to "remedy an earlier

disposition of a case that is flawed because the court misperceived or improperly assessed a material fact." *United States v. McPhail*, 1 M.J. 457, 459 (C.M.A. 1979).

Although initially wielded "to correct factual blunders," the scope of the writ expanded in time to include "constitutional and *other fundamental errors* . . . ." *Garrett v. Lowe*, 39 M.J. 293, 295 (C.M.A. 1994) (omission in original) (quoting 2 S. Childress and M. Davis, *Federal Standards of Review*, § 13.01 at 13-2 (2d ed. 1992)). The alleged factual errors must be "of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." *United States v. Morgan*, 346 U.S. 502, 509 n.15 (1954) (citations and internal quotations marks omitted). The writ "should not be granted in the ordinary case; rather, it should be granted only in extraordinary cases under circumstances compelling such action to achieve justice." *Chapman v. United States*, 75 M.J. 598, 601 (A.F. Ct. Crim. App. 2016) (citations omitted).

The Government argues that recanted testimony, without more, is not an error of the most fundamental character. The Government contends that testimony given without the prosecutor's knowledge that it was perjured is not a fundamental error upon which coram nobis relief may be permitted. The Government finds support for its argument in *United States v. Castano*, 906 F.3d 458, 464–65 (6th Cir. 2018) (citing *Burks v. Egeler*, 512 F.2d 221,229 (6th Cir. 1975)).

Petitioner replies that even without government knowledge, a due process violation occurs when the Government leaves a conviction in place after a credible recantation that would likely change the outcome. For this rule, Petitioner draws our attention to *Sanders v. Sullivan*, 863 F.2d 218, 224 (2d Cir. 1988) (stating, "[t]here is no logical reason to limit a due process violation to state action defined as prosecutorial knowledge of perjured testimony"), *superseded by statute*, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.1214 (1996), *as recognized in Drake v. Portuondo*, 321 F.3d 338, 345 n.2 (2d Cir. 2003). Petitioner observes that *Sanders* relied on cases from the Third and Fifth circuits to support its proposition that prosecutorial lack of knowledge when false testimony is given is not dispositive of a due process violation. *Id.* at 223. To that end, in *Curran v. Delaware*, the Third Circuit ruled that a police detective's perjury "cause[d] the defendant's trial to pass the line of tolerable imperfection and fall into the field of fundamental unfairness." 259 F.2d 707, 713 (3d Cir. 1958), *cert. denied*, 358 U.S. 948 (1959). In *Smith v. United States*, the Fifth Circuit ruled that a government agent's alleged false testimony at a sentencing hearing resulted in a sentence "lacking in due process." 223 F.2d 750, 754 (5th Cir. 1955).

In our jurisdiction, when a complaining witness later recants her trial testimony, such conduct at trial could amount to "'fraud' on the court" if the testimony was perjured. *United States v. Giambra*, 33 M.J. 331, 335 (C.M.A. 1991) (quoting Rule for Courts-Martial (R.C.M.) 1210(f)(3), *Manual for Courts-Martial, United States* (1984 ed.)); *but see United States v. Cuento*, 60 M.J. 106, 113 (C.A.A.F. 2004) (evaluating victim's post-trial recantation as newly discovered evidence); *United States v. Rios*, 48 M.J. 261, 269 (C.A.A.F. 1998) (evaluating victim's post-trial recantation as newly proffered evidence). If such recantation were shown to be reliable and material, it is doubtful a more convincing circumstance would compel courts in the military justice system to order remedial action "to protect the integrity of their dispositions and processes." *Denedo*, 556 U.S. at 916. Under such circumstances, an appellate court could find a fundamental flaw in the appellate proceedings and the proceedings on review, *id.*, and thus, an "exceptional circumstance[ ] not apparent to the court in its original consideration of the case." *Frischholz*, 36 C.M.R. at 309 (internal quotation marks and citation omitted).

Importantly, in the petition under review, LG's recantation reached not only trial testimony she gave, but her testimony at a Mil. R. Evid. 412 hearing where she contradicted MB's claims that LG abused him sexually. The military judge would have relied on LG's testimony at that hearing to conclude that Petitioner did not have a constitutional right to present MB's testimony that LG engaged MB in sexual activity. It was likewise consequential to this court upholding that ruling. If LG had testified at the Mil. R. Evid. 412 hearing in line with the motive she articulated in her recantation, instead of the testimony she did give at that hearing, the military judge may not have found MB's testimony irrelevant on grounds that it did not suggest a motive to fabricate.

At the same time, a three-judge panel of this court could not have concluded that it "*fail[ed] to see* how [LG's] behavior [with MB] provides a motive for LG to fabricate" if this court had direct evidence of LG's motive as LG articulated in her recantation. *Banker*, 57 M.J. at 704 (emphasis added). Put differently, if LG's recantation were shown to be reliable, her testimony at the pretrial hearing "rendered the proceeding itself irregular and invalid," *Morgan*, 346 U.S. at 509 n.15, and would be of the most fundamental character.

## B. Factfinding on *Denedo* Requirements (3) and (4)

Having determined that Petitioner can demonstrate the alleged error, if it occurred, was of the most fundamental character, it is appropriate, next, to resolve whether Petitioner might satisfy the five remaining requirements in the first tier of coram nobis analysis. They are,

> (2) no remedy other than coram nobis is available to rectify the consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition

could not have been discovered through the exercise of reasonable diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist.

*Denedo*, 66 M.J. at 126.

While not allowing that Petitioner's conviction was erroneous, the Government concedes in its answer to the petition that "(2) no remedy other than coram nobis is available" to Petitioner. The Government also concedes that "(6) the sentence has been served, but the consequences of . . . conviction persist." At the same time, the Government contests requirements (3), (4), and (5) for coram nobis relief.[8] It contends that Petitioner fails to satisfy each, and the failure to satisfy even one is fatal to the petition.

As explained next, with regard to requirements (3) and (4), which the Government contests, Petitioner has met his burden for the court to direct factfinding on his new trial claim.[9] That is to say, factfinding is not only appropriate, but necessary.

**1. Threshold for Ordering Factfinding on the Petition**

This court's authority to direct factfinding on petitions for extraordinary relief has deep roots that trace to the All Writs Act, now codified at 28 U.S.C. § 1651. As recognized by the United States Supreme Court in *Harris v. Nelson*, federal courts may "fashion appropriate modes of procedure," for example, "to assist them in conducting factual inquiries." 394 U.S. 286, 299 (1969) (interpreting the Act to allow discovery in habeas corpus proceedings). In *Harris*, the Court allowed that federal district court judges may rely on the Act as authority to direct "a fair and meaningful evidentiary hearing . . . either on its own motion or upon cause shown by the petitioner." *Id.* at 300. This is because a court can direct a factfinding inquiry "as may be 'necessary or appropriate in aid of [its jurisdiction] . . . and agreeable to the usages and principles of law.'" *Id.* (alteration and omission in original) (quoting 28 U.S.C. § 1651). *Harris* went on to articulate a low threshold for inquiry: "where specific allegations before the court show reason to believe that the petitioner may, if the facts are

---

[8] As noted earlier, the Government contends that the alleged error is not of the most fundamental character, and thus Petitioner has not shown the first *Denedo* requirement is met. *See Denedo,* 66 M.J. at 126. Accordingly, the Government maintains Petitioner fails to meet *four* of the six requirements identified by the CAAF for coram nobis relief.

[9] My colleagues in the majority are apparently of the opinion, as am I, that the court-martial record and the petition under review provide adequate information to resolve *Denedo* requirement (5) without further inquiry.

fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *Id.*

Until recently, Article 66, UCMJ, 10 U.S.C. § 866, did not expressly state that CCAs could order an evidentiary hearing on direct review, much less "expressly provide for the appellate resolution of collateral claims not raised at the court-martial." *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993). The collateral claim considered by the United States Court of Military Appeals (CMA) in *Dykes* was not a writ petition, but a post-trial allegation on direct review that six servicemembers were improperly influenced by command. *Id.* at 272–73. Because there were "substantial unresolved questions" in that case that could not be settled by post-trial affidavits, the *Dykes* court directed an evidentiary hearing, citing *DuBay*[10] for authority. *Dykes*, 38 M.J. at 271–73. In doing so, the court observed that "[t]he purpose of such a '*DuBay* hearing' is to enable a military judge at the trial level to make the findings of fact and conclusions of law on collateral matters when the record is incomplete and 'resort to affidavits [is] unsatisfactory[.]'" *Id.* at 272 (alterations in original) (quoting *DuBay*, 37 C.M.R. at 413).

Congress recently amended Article 66, UCMJ, to expressly grant military appellate courts authority to order "additional proceedings . . . as may be necessary to address a substantial issue." Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3).[11] In doing so, this court's express authority is not restricted, but neither is it delineated as to the threshold for conducting further inquiry. In the absence of direction in the statute, we look for guidance in cases like *Dykes*, though such guidance is meager. In *Dykes*, the CMA recognized that, even as of the date of that decision, the court "ha[d] not clearly articulated a standard for determining *when* resorting to [post-trial] affidavits is unsatisfactory for resolving such collateral matters." *Id.* at 272 n.1 (emphasis added). *Dykes* contemplated, however, that "[a] useful comparison . . . might be the Supreme Court's practice with respect to federal habeas corpus proceedings." *Id.* (dictum) (citing *Harris*, 394 U.S. at 298–300) (other citations omitted). In that regard, *Dykes* observed that "[t]he Supreme Court has relied on the standard

---

[10] In *DuBay*, the CMA observed that the "collateral issues," in that case and others, would normally "on remand in the civil courts, be settled in a hearing before the trial judge." 37 C.M.R. at 413 n.2. However, because the "court-martial structure" at that time was "such that this cannot be accomplished," the CMA found it "necessary to refer the matter . . . to be heard by the law officer alone." *Id.*

[11] *See* Military Justice Act of 2016 (MJA), National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5001–5542 (23 Dec. 2016); *see also* Exec. Order 13,825, § 3(a), 83 Fed. Reg. 9889 (8 Mar. 2018) (directing, "except as otherwise provided by the MJA or this order, the MJA shall take effect on January 1, 2019").

used in motions for summary judgment for determining whether to order an evidentiary hearing in habeas corpus proceedings." *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63 (1977)). In *Blackledge*, the Supreme Court noted that in civil cases, "there exists a procedure whose purpose is to test whether *facially adequate allegations* have sufficient basis in fact to warrant plenary presentation of evidence." 431 U.S. at 80 (emphasis added) (summarizing procedure analogous to the motion for summary judgment).

To be sure, neither the Supreme Court's decisions in *Harris* and *Blackledge*, nor the CMA's decision in *Dykes*, define precisely when factfinding may be necessary in a coram nobis context. However, taken together, these cases suggest an inquisitive approach is called for on a collateral matter over one that is more demanding of a petitioner upon initial submission of a writ petition to an appellate court. These decisions suggest a facial claim is sufficient. In *Dykes*, the CAAF was receptive to this approach. This standard is in harmony with the CAAF's decision in *Campbell*, 57 M.J. 134 (C.A.A.F. 2002), decided almost a decade after *Dykes*. In *Campbell*, the appellant, on direct review, filed a petition for extraordinary relief under the All Writs Act to compel discovery. *Id.* at 136 (writ of mandamus). The appellant sought information from the government to support a claim of prosecutorial misconduct. *Id.* at 137. In returning the record to the CCA for further review, the CAAF noted that the proper question under review was "whether [the] appellant has done enough to establish the relevance of the information sought to his allegation of prosecutorial misconduct to warrant such appellate review." *Id.* at 139. The CAAF concluded that the appellant met his burden, noting that the first question a CCA must ask in the context of that case is whether the "appellant met his threshold burden that *some measure* of appellate inquiry is warranted." *Id.* at 138 (emphasis added). In the context of a post-trial discovery dispute, a CCA must be satisfied that "the defense has made a *colorable showing* that the evidence or information exists." *Id.* (emphasis added).

The Supreme Court's *Harris* and *Blackledge* opinions, and the opinions in *Dykes* and *Campbell*, indicate that a petitioner's initial burden is essentially a threshold showing that relief may be warranted. When the CAAF examined the writ of coram nobis within the military justice system, it was not inconsistent with these opinions, or this conclusion. To be sure, the CAAF acknowledged a "petitioner must establish a clear and indisputable right to the requested relief." *Denedo*, 66 M.J. at 126 (reviewing an ineffective assistance of counsel claim raised via a coram nobis petition). However, on the question of factfinding as an antecedent for evaluating the petition, the CAAF's charge to CCAs was more permissive: the CAAF observed that CCAs "are well-positioned to determine whether corrective action on the findings and sentence is warranted, including ordering any factfinding proceedings *that may be necessary*." *Id.* at 124 (emphasis added).

Significantly, the Supreme Court's decision that affirmed the CAAF's *Denedo* opinion did not spare the CCA from ordering factfinding proceedings on the criteria that the CAAF identified. It did just the opposite. The Supreme Court's remand "for further proceedings consistent with [the Court's] opinion" identified two areas that the CCA "can explore on remand."[12] 556 U.S. 904, 917 (2009) (dictum) ("hold[ing] only that the military appellate courts had jurisdiction to hear respondent's request for a writ of *coram nobis*"). Among factors that might be worthy of further investigation, the Court identified the *Denedo*-petitioner's "delay in lodging his petition," and "when he learned or should have learned of his counsel's alleged deficiencies." *Id.* (dictum). Each of those factors correspond to criteria the CAAF identified in its *Denedo* decision, which are at issue in the petition under review, specifically the third criteria: "valid reasons exist for not seeking relief earlier;" and the fourth: "the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment." 66 M.J. at 126.

**2. Analysis**

Because a CCA must conduct factfinding upon a petitioner's facially meritorious claim for relief, I turn then to the question of whether Petitioner has made such a showing on *Denedo* requirements (3) and (4) contested by the Government. For the reasons that follow, I conclude that he has.

In regard to requirement (3), Petitioner has made a facial showing that valid reasons may exist for not seeking relief earlier. On 28 October 2021, LG signed an affidavit declaring for the first time that her sworn testimony at Petitioner's court-martial was false in nearly every material respect. Petitioner relies on her affidavit to support his petition filed with the court on 26 January 2022. In LG's telling, Petitioner's "wrongful conviction has weighed on [her] for decades, but [she] did not know what to do or how to fix it." Despite having no contact with Petitioner since his court-martial in 2001, she contacted him in May of 2017 and says that she has since been committed to "rectifying this wrong and helping to reverse his wrongful conviction." Although she is represented by counsel, she states that she submitted the affidavit against her counsel's advice. The Government argues that Petitioner failed to provide a valid reason for waiting to petition for relief until well after May 2017, when LG met with Petitioner and they "had a discussion, about events that occurred." Questions about what LG revealed to Petitioner in May 2017, and why Petitioner

---

[12] Writing separately, Chief Justice Roberts presaged the weight of responsibility "an out-of-court evidentiary hearing on the merits of the petitioner's claim" could entail. *United States v. Denedo*, 556 U.S. 904, 926 (2009) (Roberts, C.J., concurring in part and dissenting in part) (observing that the CCAs and the CAAF "are not equipped to handle the kind of factfinding necessary to resolve claims that might be brought on *coram nobis*") (citing *DuBay,* 37 C.M.R. at 411)).

sought a writ only after LG signed a statement under penalty of perjury while represented by counsel, are matters that may be explored in an evidentiary hearing.

In regard to requirement (4), Petitioner has made a facial showing that the new information presented in the petition may not have been discoverable through the exercise of reasonable diligence prior to the original judgment. The Government argues LG "may have recanted" during Petitioner's trial, or earlier, "if [trial] defense counsel simply asked [LG] a direct question on this point." For support, the Government references LG's statement in her affidavit that "[d]uring the trial, on cross examination, [she] admitted that [she] had provided inconsistent and false statements to investigators, but [she] never directly was asked or made [Petitioner]'s [trial] defense counsel aware that [her] allegations were false." On this record, at no point did LG admit that she fabricated allegations during pretrial interviews with investigators and counsel. If a genuine question exists as to this matter, that question may be investigated at an evidentiary hearing.

## C. Factfinding on Petitioner's New Trial Claim

Notwithstanding this court's conclusion that Petitioner is entitled to factfinding on *Denedo* requirements (3) and (4), further inquiry would not be necessary if Petitioner cannot demonstrate that relief may be warranted on the merits of LG's recantation as it may bear on her pretrial and trial testimony. It follows, then, that this court must consider whether further inquiry is warranted on Petitioner's request for a new trial. The question to be answered is what standard governs when an evidentiary hearing may be necessary on the merits of a writ petition seeking a new trial?

The *Cuento*, *Rios*, and *Giambra* decisions each involved a petition for new trial before the proceedings, findings, and sentence were final and conclusive under Article 76, UCMJ, 10 U.S.C. § 876. Unlike those cases, finality attached in Petitioner's case after the United States Supreme Court denied his petition for a writ of certiorari.[13] In view of this difference, and the "very limited circumstances" under which coram nobis permits collateral attack after finality has attached, *Denedo*, 66 M.J. at 126, this court's duty is to address the legal standard to guide factfinding on his claim. Put differently, the question arises as to whether finality holds sway in disputes over the suitability to assess LG's

---

[13] On 25 June 2007, the United States Supreme Court denied petition for writ of certiorari to the CAAF. *Banker v. United States*, 551 U.S. 1147 (2007). The entire sentence, which included a bad-conduct discharge, was executed by promulgating order dated 30 October 2008, pursuant to Article 71(c), Uniform Code of Military Justice, 10 U.S.C. § 871(c).

credibility on the strength of the post-trial submissions, on the one hand, or to direct an evidentiary hearing, on the other.

In general terms, petitions for a new trial "based on a witness's recantation 'are not viewed favorably in the law.'" *Rios*, 48 M.J. at 268 (quoting *Giambra*, 33 M.J. at 335). A party seeking a new trial on the grounds that the victim recanted her testimony "has the heavy burden of establishing his entitlement to relief." *Giambra*, 33 M.J. at 335 (citing *Larrison v. United States*, 24 F.2d 82, 87 (7th Cir. 1928)). "[T]he real problem," in the view of the CMA, is "to determine whether the testimony given at trial was false." *Id.* (concluding *DuBay* hearing appropriate). However, "'when the alleged perjurer is the prosecutrix herself,'" the CAAF remains "'disinclined' to burden [the petitioner] with mechanical application of a rigorous standard." *Cuento*, 60 M.J. at 113 (alteration omitted) (quoting *Giambra*, 33 M.J. at 335) (concluding "recantation cannot adequately be measured without a *DuBay* hearing").

In a timely petition for new trial under the Rules for Courts-Martial, a reviewing court evaluates whether a recantation "if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result. . . ." *Id.* (quoting standard for granting a new trial codified in R.C.M. 1210(f)(2)(C)). "The reviewing court does not determine whether the proffered evidence is true; nor does it determine the historical acts. It merely decides if the evidence is sufficiently believable to make a more favorable result probable." *Id.* at 112 (quoting *United States v. Brooks*, 49 M.J. 64, 69 (C.A.A.F. 1998)).

Assuming a petition under the Rules for Courts-Martial demonstrates jurisdiction and a legal basis to warrant relief, an appellate court must evaluate when, and how, factfinding may be conducted. If upon "examining the newly proffered evidence and comparing it to the trial evidence, we are not 'reasonably well satisfied' that [the victim]'s trial testimony was false," then we may deny the petition. *Rios*, 48 M.J. at 269. Conversely, if this court is uncertain whether a sworn recantation is false, an evidentiary hearing "may be appropriate to the fair resolution of the case." *Giambra*, 33 M.J. at 335 (citing *DuBay*). In either circumstance, the burden is on the petitioner "to prove by the greater weight of the evidence that the victim lied at his trial." *Giambra*, 33 M.J. at 336.

In *Cuento* and *Giambra* the CAAF determined that the CCA abused its discretion when it failed to order an evidentiary hearing to determine the credibility of the victim's post-trial recantation. In *Rios*, the CAAF concluded that the CCA did not abuse its discretion when it resolved the credibility of the victim's recantation without remanding for an evidentiary hearing. Between the three cases—*Cuento*, *Rios*, and *Giambra*—the CAAF identified two principal considerations on the question whether a CCA abused its discretion: first, the

19

presence or absence of evidence, including physical evidence, corroborating a victim's trial testimony, *Cuento*, 60 M.J. at 113; *Rios*, 48 M.J. at 268; *Giambra*, 33 M.J. at 334–35; and second, the circumstances of recantation. *Cuento*, 60 M.J. at 113; *Rios*, 48 M.J. at 269.

It seems apparent that the same principal considerations in *Cuento*, *Rios*, and *Giambra* guide this court's determination whether an evidentiary hearing is appropriate, and without regard to finality. To begin, whether raised by way of a petition for new trial timely asserted under Article 73, UCMJ, 10 U.S.C. § 873, or extraordinary writ after finality has attached, either proceeding is outside of the direct appeal process and, necessarily, "collateral." *See*, *e.g.*, *Wall v. Kholi*, 562 U.S. 545, 552 (2011) (acknowledging the Court described coram nobis as a means of "collateral attack" in *Morgan*, 346 U.S. at 510–11); *Burns v. Wilson*, 346 U.S. 137, 141 (1953) (observing a petition for new trial is "a special post-conviction remedy within the military establishment apart from ordinary appellate review, whereby one convicted by a court-martial may attack collaterally the judgment under which he stands convicted"). Whether by a petition for new trial on direct review or petition for writ of coram nobis after finality, a CCA's avenue for determining the merits of post-trial relief are foreclosed if there has not been an opportunity to fully develop a factual record. It follows, then, that the legal standard to decide whether an evidentiary hearing is necessary is decided without regard to finality in the military justice system.

Additional support for this conclusion is the principle that coram nobis "permits '[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review,'" *Denedo*, 66 M.J. at 125 (quoting *Morgan*, 346 U.S. at 511). The writ is "designed 'to correct errors of fact.'" *Denedo*, 556 U.S. at 910 (quoting *Morgan*, 346 U.S. at 507). It "is properly viewed as a belated extension of the original proceeding during which the error allegedly transpired." *Id.* at 913 (citing *Morgan*, 346 U.S. at 505, n. 4 (coram nobis is "a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding")). Essential to the court's authority "to protect the integrity of its earlier judgments," *Denedo*, 556 U.S. at 916, is its power to engage in and direct factfinding. *See id.* at 917 (identifying factual and legal questions the CCA "can explore on remand"); *see also Denedo*, 66 M.J. at 130 (remanding for CCA to decide the merits of petition either on the basis of the record or an evidentiary hearing). It follows, then, that "additional proceedings" may be necessary to resolve the writ as an extension of the court-martial proceedings in which error allegedly occurred. Article 66(f)(3), UCMJ.

For these reasons, it is logical to conclude that *Cuento*, *Rios*, and *Giambra* provide suitable guidance on the question whether Petitioner must be permitted an opportunity to develop the record further, and for the Government to

challenge Petitioner's evidence. For the reasons that follow, I believe the interests of judicial economy and efficiency are cause to inquire into the question of LG's veracity sooner than later, which is why I disagree with my esteemed colleagues and the limited scope of our order.

Put simply, Petitioner has established a necessary legal and factual basis under Article 66(f)(3), UCMJ, for the court to inquire into the merits of his petition for a new trial. Evidence at trial of Petitioner's guilt was hardly overwhelming.[14] The Government's case largely depended on LG's credibility at trial, which was called into question on cross-examination even before her sworn recantation many years later. The corroboration was slight and circumstantial. LG testified she recalled plumbers performing work at Petitioner's home when he first exposed himself to her. The Government introduced into evidence housing records that documented dates when maintenance was performed on Petitioner's house. LG testified that Petitioner showed her pornography, which investigators discovered in the home. She testified she was not concerned about getting pregnant because Petitioner told her he had a vasectomy. The Prosecution presented medical evidence of his vasectomy. In her sworn recantation, however, LG explains she knew about pornography Petitioner kept in the home because she learned about it from investigators, and the fact that Petitioner had a vasectomy was something she learned while babysitting for the family.

On re-direct examination, LG explained she first reported Petitioner's sexual misconduct to a friend, AC. Her friend noticed she "was upset," and that led to the initial report. After LG testified, the Prosecution offered testimony of two witnesses on LG's character for truthfulness; one of the witnesses recalled an occasion when Petitioner made an "inappropriate comment" towards LG that was "sexual in nature." The witness emphasized that the comment had nothing to do with Petitioner wanting to engage in sexual activity with LG. Finally, the Government entered a stipulation of expected testimony from Petitioner's psychotherapist, which detailed statements Petitioner made to his therapist, including Petitioner's anger at a man who had an affair with Petitioner's wife, Petitioner's sexual urges when not sexual with his wife, and his

---

[14] Even so, the Government's proof depended on the trier of fact concluding that LG was worthy of belief as borne out by this court "find[ing] the testimony of LG to be credible." *Banker*, 57 M.J. at 701 (reviewing for legal and factual sufficiency). On direct review, this court "conclude[d] that [LG's] testimony was the truth," moreover, "when considering all the evidence admitted on findings." *Id.*

possession of pornographic material. Overall, the Prosecution presented marginally probative evidence corroborating LG's trial testimony.[15]

### D. Conclusion

In regard to Petitioner's court-martial, the court must "presume[ ] the proceedings were correct and the burden rests on the accused to show otherwise." *Morgan*, 346 U.S. at 512. For the aforementioned reasons, I believe a factfinding hearing on *Denedo* factors (3) and (4) is not only appropriate, but that it is necessary. However, I disagree with my colleagues with respect to the limited scope of our order that does not permit additional proceedings to resolve the question of LG's veracity, which would allow the court to fully evaluate the petition on further review.

Nonetheless, I agree at this time the court should not decide the propriety of the requested writ. For the aforementioned reasons, I join the decision of my colleagues to order additional proceedings under Article 66(f)(3), UCMJ.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[15] As quoted by my colleagues in the majority, the Government identifies facts that it claims will contradict or impeach LG's recantation if those facts were presented at a *DuBay* hearing. However, many if not all of the facts underlying such claims, including that "Petitioner's own admissions that a sexual relationship had occurred," were either excluded or not admitted into evidence at Petitioner's court-martial.