# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, COOPER, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist STEPHEN C. CHILLURA**
**United States Army, Appellant**

ARMY 20230579

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Jacqueline L. Emanuel, Military Judge (arraignment)
Daniel L. Mazzone, Military Judge (trial)
Colonel John M. McCabe, Staff Judge Advocate

For Appellant: Captain Patrick R. McHenry, JA (argued); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Captain Patrick R. McHenry, JA (on brief).

For Appellee: Captain Andrew T. Bobowski, JA (argued); Colonel Richard E. Gorini, JA; Major Marc B. Sawyer, JA; Captain Andrew T. Bobowski, JA (on brief).

9 February 2026

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Senior Judge:

We hold, under the circumstances of appellant's case, the military judge did not abuse his discretion by admitting either a child forensic interview under the residual hearsay exception or evidence pertaining to appellant's alcohol consumption on the date of a charged offense.

An enlisted panel, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of child endangerment and two specifications of domestic violence in violation of Articles 119b and 128b, Uniform Code of Military Justice, 10 U.S.C. §§ 919b, 928b [UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, eight months of confinement, and

reduction to the grade of E-1. On appeal, appellant raises three assignments of error, two of which merit discussion but no relief.[1]

## BACKGROUND

In July 2022, appellant beat and strangled his five-year-old stepson, ███, in their shared on-post home while ███ mother was at work. Following the assault, ███ approached one neighborhood playmate, then another, both of whom observed him crying. After being asked, ███ told at least one playmate what happened. Each playmate noted different injuries, one describing scratches and bruising on ███'s chest, and the other "big welts on his neck and face." One of the playmates summoned his mother, who found ███ in his backyard sobbing. The playmate's mother observed swelling and red marks on ███'s neck and on the side of his face. After asking ███ what happened, ███ told her appellant got mad at ███ for crying and shoved his face "down to the ground."

The playmate's mother called the military police (MPs). When the MPs arrived at appellant's home, ███ answered the door, "crying profusely." ███'s face was swollen and the MPs "observed heavy bruising" and other markings on ███. Through his tears, ███ told the MPs that "his daddy did it." The MPs located appellant in his backyard, standing in a kiddy pool, consuming alcohol. Appellant appeared heavily intoxicated, and a strong odor of alcohol emanated from him. When appellant learned the MPs intended to detain him for suspected child abuse, he said he "was only roughhousing" with ███, and "it's not [my] fault [███ is] fair skinned."

As the MPs escorted appellant to a patrol car parked in front of the home, ███ pointed at appellant and said to a MP, "he hurt me." When asked who "he" was, ███ confirmed he was referencing appellant. Shortly thereafter, emergency medical services (EMS) arrived and evaluated the injuries covering ███'s body (including bruising around his neck and down his back, all the way to his buttocks). The EMS personnel also removed a glass shard from ███'s ear.

███ was taken to a local hospital where doctors discovered he had additional bruising under his chin, which extended to his shoulders. Due to the nature of these injuries, the attending doctor recommended transferring ███ to a pediatric hospital. At the pediatric hospital, a doctor, board-certified in child abuse pediatrics, concluded ███'s numerous injuries were consistent with physical abuse.

---

[1] We have given full and fair consideration to the other matters raised by appellant, including those personally submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they merit neither discussion nor relief.

The same day as the assault, ██ completed a child forensic interview with a Special Agent (SA) from the Army Criminal Investigation Division (CID). ██ identified appellant as the source of his injuries, telling the SA, who possessed specialized training in conducting child forensic interviews, "[appellant] choke me right here [motioning to neck] and then—and then he hold me on the wall then he dropped me, and that's when he got me on the neck." ██ also stated appellant attacked him as, "[b]ecause I cried, and then he did it." Further, ██ described the extent of his injuries, "[his throat] burned," and his mouth felt "bad" and "it hurt[]." ██ also described prior episodes of physical abuse and humiliation at appellant's hands. Prior to trial, the government provided notice of the intent to introduce ██'s forensic interview at trial pursuant to Military Rule of Evidence [Mil. R. Evid.] 807 if he "fail[ed] to testify to the [charged] events."

At trial, during opening statements, trial counsel discussed appellant's use of alcohol the morning of the charged assault. Defense counsel objected to the reference to appellant's alcohol use as "impermissible propensity" evidence which the government had failed to provide notice under Mil. R. Evid. 404(b). The military judge ruled the evidence of appellant's alcohol consumption "on the . . . day that the alleged incident occurred" was not propensity evidence, but res gestae of the charged offense.[2]

Following this ruling, the government introduced into evidence photographs of appellant's home depicting empty alcoholic beverages inside the home and backyard on the day of the assault.[3] An eleven-year-old witness also testified appellant appeared "[d]runk and pretty angry," while another witness described hearing "yelling" from appellant's backyard. Later, a former investigator for child protective services, who arrived at appellant's home shortly after the MPs, testified that appellant "seemed intoxicated."

When called to testify in front of the panel members, after being deemed competent to testify,[4] ██ could not recall basic events surrounding the date of the charged assault (approximately sixteen months prior). The relevant portion of ██'s testimony is as follows:

---

[2] "Res gestae" are "[t]he events at issue, or other events contemporaneous with them." Black's Law Dictionary (9th ed. 2009).

[3] Defense counsel did not object to the admission of these photographs.

[4] During an initial Article 39(a) hearing, ██ was unable to articulate the difference between a truth and a lie. ██ also appeared fidgety and "nervously silly." In a later Article 39(a) hearing, after government counsel asked ██ "to be serious," ██ was able to distinguish truths from lies.

Q. And where did you live then?
A. I don't know.
Q. Did you live in Oklahoma?
A. Yeah.

. . .

Q. Do you remember when you stopped living with your mom and [appellant]?
A. Yeah.
Q. And do you remember riding in an ambulance?
A. Yeah.
Q. Can you tell me about that? Why were you in the ambulance?
A. I don't know.
Q. Okay. Did something hurt that day?
A. I don't know.
Q. Do you remember anybody doing anything to you that day, or did somebody do something to you that day?
A. I don't know.

. . .

Q. [██], do you remember a time when you had bruises on your neck?
A. No.

. . .

ATC: Thank you, [██]. I don't have any more questions for you, but the defense may have some questions for you. Okay?

After requesting a recess to consult with their expert, defense counsel affirmatively waived cross-examination of ██.

Following ██, the government called the SA who interviewed ██ and moved to introduce the video of his forensic interview. Defense objected, arguing ██'s statements in the interview were not reliable. After making detailed findings of fact on the record, the military judge admitted the video in its entirety (approximately twenty minutes), pursuant to Mil. R. Evid. 807.[5]

---

[5] In his ruling, the military judge cited the correct version of Mil. R. Evid. 807, which went into effect 28 July 2023, approximately one month prior to appellant's arraignment. *See* Executive Order 14,103, 88 Fed. Reg. 50,535, 50,577 (July 28, 2023). In addition, the military judge noted, "[i]n making past assessments, courts could not consider other evidence of independent events or facts not directly linked

(continued . . .)

4

Later the same day, the military judge issued a written ruling, expanding on his analysis. In his ruling, the military judge noted he considered as "corroborating evidence" that: (1) the statement was made "in the immediate aftermath of [███'s] initial disclosure," (2) ███'s manner of speech and demeanor, captured in the interview, was consistent with his in-court appearances and his statements made to other witnesses, and (3) ███ did "not appear to present a bias [or animus] towards the [appellant] in any of [███'s] statements and his story [was] consistent with the injuries documented on his neck, lower back, and buttocks."

The military judge further determined the interview was "more probative on the point for which it [was] offered" than any other reasonably available evidence, given that ███ had been called to testify at trial, but "his memory seemed to fade based upon his youth and ability to easily lose focus." Lastly, the military judge noted ███'s loss of memory was hardly uncommon, as "the most common reason for finding 'necessity' under [Mil. R. Evid.] 807" was in child-victim cases where the child-witness was unable "to remember the events previously disclosed to another" on the witness stand.

## LAW AND ANALYSIS

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. McElhaney*, 54 M.J. 120, 129 (C.A.A.F. 2000) (citations omitted). The "abuse of discretion standard is a strict one, calling for more than a mere difference of opinion—[t]he challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. St. Jean*, 83 M.J. 109, 112 (C.A.A.F. 2023) (alteration in original) (citation omitted) (internal quotation marks omitted). A military judge abuses their discretion: "(1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable." *United States v. Greene-Watson*, 85 M.J. 340, 345 (C.A.A.F. 2025) (internal quotation marks omitted) (citation omitted). If a military judge abuses their discretion, such error warrants reversal only if it "materially prejudiced a substantial right of the accused." *E.g.*, *United States v. Jones*, 85 M.J. 80, 84 (C.A.A.F. 2024) (citing UCMJ art. 59(a)). In assessing prejudice, we weigh "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4)

---

(. . . continued)

to the proffered statement" but acknowledged the new EO appeared to lessen the burden on the proponent of the evidence. Given the recency of the change, however, the military judge reasonably concluded that prior caselaw regarding the reliability of the proffered evidence offered valuable "*guidelines* [in the court's] analysis of the evidence proffered in this case." (emphasis added).

the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017) (internal quotation marks omitted) (citation omitted).

*A. The child forensic interview as residual hearsay.*

Appellant claims the military judge erred in admitting ███'s forensic interview under Mil. R. Evid. 807. We disagree.

The residual exception under Mil. R. Evid. 807(a) allows a party to introduce a hearsay statement that does not otherwise fall under an enumerated exception found in Mil. R. Evid. 803 and 804, if:

(1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of the circumstances under which it is made and evidence, if any, corroborating the statement; and

(2) the statement is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Under a prior version of the rule, statements admitted pursuant to Mil. R. Evid. 807 were required to have *prima facie* "equivalent circumstantial guarantees of trustworthiness as" the exceptions found in Mil. R. Evid. 803 and 804. *United States v. Donaldson*, 58 M.J. 477, 488 (C.A.A.F. 2003) (internal quotation marks omitted) (quoting *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A. 1991)). In determining whether a proffered statement was sufficiently trustworthy, courts have historically looked to factors such as: "(1) the mental state of the declarant; (2) the spontaneity of the statement; (3) the use of suggestive questioning; and (4) whether the statement [could] be corroborated. Other indicators of reliability may [also] include the declarant's age or the circumstances under which the statement was made." *Id.* (citations omitted).

The current iteration of the rule, however, "expressly requires military judges to consider other corroborating evidence, separate and apart from the circumstances under which the statement was made." *United States v. Maebane*, __ M.J. __, 2025 CAAF LEXIS 772, at *17 (C.A.A.F. 18 Sept. 2025). While there must still be "sufficient guarantees of trustworthiness," Mil. R. Evid. 807(a)(1), the "evidence admitted under [Mil. R. Evid.] 807 is not required to be completely free from all questions." *Maebane*, 2025 CAAF LEXIS, at *16 (internal quotation marks omitted) (citations omitted).

We do not find the military judge erred, either in his application of the current version of Mil. R. Evid. 807 or in his consideration of the factors previously used to assess the trustworthiness of the proffered evidence.[6]

The totality of the circumstances surrounding ███'s interview bore sufficient guarantees of trustworthiness. The interview occurred within hours of the assault, when the details were still fresh in ███'s mind. However, despite the recency of the latest incident of abuse, ███ appeared relatively calm and did not appear to harbor any sort of resentment or bias against appellant during the interview. As the military judge noted, ███ also demonstrated other behaviors consistent with his age. ███ was generally asked open-ended questions, by a SA trained in interviewing children, which allowed ███ to provide a descriptive account of the abuse, using language appropriate for his age.

███'s statement was also corroborated by external evidence, including appellant's admission that he was, "only roughhousing" with ███, and it was "not his fault the child's fair skinned." ███'s documented injuries and the corresponding testimony from a pediatric abuse expert were also largely consistent with the injuries described by ███ in his interview. Lastly, despite ███'s tender age, we note his account was largely stable across tellings, first to his neighbors, second, to responding emergency personnel, third, to the medical personnel who treated him at the hospital, and fourth, to the CID SA in his forensic interview.

Appellant further argues ███'s testimony was "not unreasonably difficult to obtain directly from an available declarant." *United States v. Czachorowski*, 66 M.J. 432, 436 (C.A.A.F. 2008) (citations omitted). We disagree.

"[C]ourts have found the residual hearsay exception inapplicable when the evidence is not unreasonably difficult to obtain directly from an available

---

[6] The current version of Mil. R. Evid. 807(a)(1) identifies two sources of information the military judge should use in assessing the trustworthiness of a proffered statement: (1) *"the totality of the circumstances under which [the statement] was made,"* and (2) "evidence, if any, corroborating the statement[.]" (emphasis added). This first source appears similar enough to the prior Mil. R. Evid. 807(a)(1) standard ("equivalent circumstantial guarantees of trustworthiness"), such that a military judge could reasonably rely on past caselaw analyzing that clause in assessing evidence under the corresponding portion of the new standard. We note a military judge limiting their analysis to such facts and circumstances under which the statement was made would be error under the new standard. *See Maebane*, 2025 CAAF LEXIS 772, at *17. Absent further guidance from our superior court, we find the current version of Mil. R. Evid. 807 merely expanded the scope of evidence available to a military judge when determining the trustworthiness of a proffered statement.

7

declarant." *Id.* (citations omitted). "Absent personal observation or a hearing, some specific evidence of reasonable efforts to obtain other probative evidence is still required under [Mil. R. Evid.] 807(B)." *Id.* A mere proffer by the proponent is not sufficient. *Id.* However, other forms of testimony "of what the child abuse victim said [is] more probative than any other reasonably procurable evidence [when] the child was too frightened and uncommunicative to testify meaningfully." *United States v. Shaw*, 824 F.2d 601, 609-10 (8th Cir. 1987) (internal citations omitted).

Federal courts have long recognized that "when a child is unable or unwilling to testify in a courtroom setting, a child's out-of-court statements may be the most probative evidence on an issue." *United States v. W.B.*, 452 F.3d 1002, 1005-06 (8th Cir. 2006); *accord United States v. Sully*, 114 F.4th 677, 685 (8th Cir. 2024). This approach in child abuse cases extends to the "necessity" requirement.

The military judge was well within the bounds of reasonable judicial discretion in finding ██'s testimony not reasonably procurable by the government. Although ██ was deemed competent, he was unable to answer basic questions or remember ancillary details related to the abuse. Given the military judge had the ability to personally observe ██'s testimony, appellant's case is a far cry from others like *Czachorowski*, where the determination of unavailability hung solely on a proffer by the proponent of the hearsay statement. *See* 66 M.J. at 436.

We disagree with our dissenting colleague's opinion that the government failed to ask ██ specific enough questions to satisfy the necessity prong. The series of questions the trial counsel went through with ██ during his testimony establish it was unreasonably difficult to obtain evidence of the abuse directly from ██. After the then six-year-old ██ testified that he remembered riding in an ambulance, the trial counsel asked him: (1) "why" he was in the ambulance, (2) if "something hurt" that day, and (3) if "somebody [did] something" to him that day. Each time, ██ responded, "I don't know." Finally, the trial counsel asked ██ "do you remember a time when you had bruises on your neck?" to which ██ responded, "No." Taken together, this exchange sufficiently demonstrates that further direct questioning of ██ was unlikely to yield meaningful evidence, thereby satisfying the necessity prong.

Given ██'s inability to remember details related to the abuse when he testified, his forensic interview was "more probative on the point . . . offered than any other evidence that the proponent [could have] obtain[ed] through reasonable efforts." Mil. R. Evid. 807(a)(2). Furthermore, given the sufficient guarantees of trustworthiness surrounding ██'s statement, including corroborating evidence, the military judge did not abuse his discretion in admitting ██'s forensic interview with CID.

*B. Evidence of appellant's alcohol consumption.*

Appellant also claims the military judge abused his discretion in allowing the government to introduce evidence of appellant's alcohol use on the day of the charged misconduct without first providing notice of its intent to do so under Mil. R. Evid. 404(b). Appellant further alleges the military judge compounded this error by "create[ing] a scenario where the defense could not ask for [a Mil. R. Evid.] 404(b) instruction since it was not implicated."[7]

Evidence is *res gestae* of the charged offense when it is "inexorably intertwined with the alleged offense" and is "'part of the same transaction.'" *United States v. Gaddy*, ARMY 20150227, 2017 CCA LEXIS 179, at *5 (Army Ct. Crim. App. 20 Mar. 2017) (mem. op), pet. denied, 76 M.J. 430 (C.A.A.F. 2017). If conduct is res gestae, no Mil. R. Evid. 404(b) notice is necessary, even if the conduct may also be offered for a Mil. R. Evid. 404(b) non-propensity purpose. *United States v. Metz*, 34 M.J. 349, 351 n.* (C.M.A. 1992).

The military judge did not abuse his discretion. "Appellant's alcohol consumption was part of the facts and circumstances explaining the *res gestae* of the offense." *United States v. Hernandezaviles*, ARMY 20170131, 2019 CCA LEXIS 76, at *8 (Army Ct. Crim. App. 26 Feb. 2019) (mem. op.) (citing *Metz*, 34 M.J. at 351), pet. denied, 79 M.J. 206 (C.A.A.F. 2019). Accordingly, the military judge imposed reasonable limitations on the government's discussion of appellant's alcohol use—namely that it be limited to the day of the charged offense. The government complied with the military judge's order, presenting witness testimony concerning appellant's intoxication immediately following the outcry and admitting pictures taken the day of the offense showing empty alcohol containers in appellant's residence and backyard.

Even assuming error, appellant was not prejudiced. In this case, the government's case was strong and appellant's weak. Appellant made incriminating comments to MPs and investigators at the scene, indicating he was the source of at least some of ███'s injuries. Furthermore, ███s demeanor and outcries were largely corroborated by the medical testimony and photographs introduced by the government, discussed *supra*. Given appellant's alcohol use was not emphasized by

---

[7] We note defense counsel *did* request an instruction on "[o]ther crimes, wrongs, or acts," a request honored by the military judge. The panel was instructed, "You have heard evidence throughout this trial that the accused may have consumed alcohol on [the day MC was assaulted], you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged."

trial counsel in argument,[8] and the panel was properly instructed on how they could consider said evidence, any risk of harm was nullified.

## CONCLUSION

The findings and sentence are AFFIRMED.[9]

Judge COOPER concurs.

SCHLACK, Judge, concurring in part and dissenting in part:

An out of court statement admitted into evidence pursuant to Military Rule of Evidence [Mil. R. Evid.] 807 must be three things: material, reliable, and *necessary*. *United States v. Kelley*, 45 M.J. 275, 280 (C.A.A.F. 1996). In deciding the military judge did not abuse his discretion, the majority finds the forensic interview at issue was "more probative on the point for which it [was] offered than any other evidence that the proponent [could] obtain through reasonable efforts" and therefore, necessary. *Manual for Courts-Martial, United States* (2024 ed.), Military Rule of Evidence [Mil. R. Evid.] 807(a)(2). I disagree, and therefore, dissent.

Military Rule of Evidence 807 is routinely invoked in cases involving child witnesses. The litigation involving the admissibility of evidence offered pursuant to this rule is often focused on the reliability prong of Mil. R. Evid. 807. In 2023, Mil. R. Evid. 807 was amended to align with Federal Rule of Evidence 807. *See* Exec. Order 14,103, 88 Fed. Reg. 50,535, 50,577 (July 28, 2023). The change broadened the scope of evidence available to the military judge assessing reliability of the proffered statement (i.e., a change to Mil. R. Evid. 807(a)(1)). Importantly, it did not modify the necessity prong of the rule. *Compare Manual for Courts-Martial, United States* (2019 ed.), Military Rule of Evidence 807(a)(3), *with* Mil. R. Evid. 807(a)(2). The proponent must still demonstrate that "he could not obtain more probative evidence despite 'reasonable efforts.'" *United States v. Czachorowski*, 66 M.J. 432, 435 (C.A.A.F. 2008). Efforts are not reasonable if the proponent aims to satisfy the necessity prong by asking ancillary questions and then throwing his proverbial hands in the air when the response is "I don't know." That is functionally what happened in this case.

---

[8] To the contrary, it was only mentioned once in opening argument, once in closing argument and once in rebuttal.

[9] The first findings entry of the "Statement of Trial Results Findings Worksheet" is corrected to reflect "Specification 1."

"[B]ecause the direct testimony of the hearsay declarant ordinarily would be judged the most probative evidence," *id.* at 436 (citation omitted), "[t]he necessity prong essentially creates a best evidence requirement." *Kelley*, 45 M.J. at 280 (internal quotation marks omitted) (citation omitted). Necessity of an out of court statement "may be satisfied where a witness cannot remember or refuses to testify about a material fact." *United States v. Wellington*, 58 M.J. 420, 425-26 (C.A.A.F. 2003) (citation omitted) (no abuse of discretion when military judge admitted recorded interview of declarant, who was unable to recall statement made while under "massive medication," which was needed to corroborate the accused's confession). However, to establish necessity the proponent must show the witness' lack of memory, for example, is about the material fact for which the out of court statement is offered to prove. Otherwise, the proponent fails to establish that "there is no other more probative evidence of that fact." *Id.* at 425

Here, counsel asked a young child about a ride in an ambulance on "that day" without establishing any of the following: (1) whether the child-witness knew what "that day" meant, (2) whether the child-witness rode in an ambulance on only one occasion, or (3) whether the child-witness understood how "that day" was connected to the charged conduct at issue. In effect, the government held ███ out as being unable to remember the alleged assaults without proving it was so. *See Czachorowski*, 66 M.J. at 436 (non-permissive for the military judge to accept a general government proffer that a witness could not remember without observing the witness themselves or "some specific evidence or reasonable efforts to obtain probative evidence").

The scant foundation necessarily required the military judge to make far too many assumptions about what the child-witness could not remember without a factual basis to do so. The findings of fact supporting the military judge's ruling on the necessity prong underscores these assumptions. The discussion was limited to: (1) that ███ could not remember living in Oklahoma without prompting from counsel; (2) he could recall riding in an ambulance *while living with his mother and accused*, but not why he was in the ambulance, or if he was hurt when he was in it "that day." First, the finding of fact that ███ testified that the ambulance ride happened while living with his mother and the accused was clearly erroneous.[10] Second, ███'s testimony, captured nearly to its full extent in the majority opinion, is an inadequate factual basis for the military judge to determine other evidence was not available via reasonable efforts. Simply stated, the military judge did not

---

[10] In response to a compound question—"did something happen, where you stopped living with your mom and [appellant]? Do you remember when you stopped living with your mom and [appellant]?"—███ responded: "Yeah." He further acknowledged remembering riding in an ambulance, however, trial counsel failed to ask whether that ambulance ride occurred while living in Oklahoma or connect the ambulance ride to the charged offense.

observe whether ▆ could answer the most basic, yet material, questions relevant to determining necessity: i.e., whether ▆ remembered appellant assaulting him *at all* and if so, whether ▆ remembered *how* appellant assaulted him. Nonetheless, the military judge ruled the entire forensic interview was necessary. In my view, this was a clear abuse of discretion.

Despite finding legal error, this court will not "reverse a conviction for an error of law unless that error materially prejudiced an accused's substantial rights." *United States v. Pope*, 69 M.J. 328, 331 (C.A.A.F. 2011) (citing Uniform Code of Military Justice art. 59(a), 10 U.S.C. § 859(a) [UCMJ]; other citation omitted). "We review de novo whether the Government has met its burden of establishing that the error did not have a substantial influence on the findings in the context of the entire case." *Id.* at 331-32 (citation omitted). Here, I would find the government unable to meet that burden as the *only* evidence that a strangulation occurred came from the child forensic interview of ▆.[11] As such, appellant was clearly prejudiced as, without the interview, there was insufficient evidence to find him guilty of domestic violence via strangulation.

Finding appellant's domestic violence strangulation conviction legally insufficient does not end my analysis. When setting aside a conviction, this court may affirm a conviction for a lesser included offense. UCMJ art. 66(f)(1)(A)(i). Assault consummated by battery is a lesser included offense of strangulation. *See United States v. Jones*, 68 M.J. 465, 470 ("Under the elements test, one compares the elements of each offense. If all of the elements of offense X are also elements of offense Y, then X is an [lesser included offense] of Y."), and *compare* UCMJ art. 128(b)(3) (aggravated assault by strangulation), *with* UCMJ art. 128(a)(3) (assault consummated by a battery). In my view, the government put on sufficient evidence appellant committed a battery upon ▆'s neck; there was eyewitness and medical testimony of discoloration and marks on ▆'s neck in the immediate aftermath of the assault. The evidence of injury coupled with appellant's inculpatory statement that he was only "roughhousing" with ▆ and that it was not his fault that ▆ was "light-skinned" are sufficient to prove appellant did bodily harm to ▆'s neck beyond a reasonable doubt.

I recognize that changing the offense from domestic violence via strangulation to domestic violence via assault consummated by battery upon a child under sixteen

---

[11] "Strangulation" is broadly defined as: "[i]ntentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck, regardless of whether that conduct results in any visible injury . . . ." *Manual for Courts-Martial, United States* (2024 ed.), pt. IV, ¶ 77.c.(5)(c)(iii). Though there was ample, direct evidence of an injury to ▆'s neck and sufficient evidence that appellant was the perpetrator, there was no other evidence of an impediment to ▆'s breathing or blood circulation.

lessens the punitive exposure to appellant. That said, I believe eight months of confinement is appropriate for the domestic violence via assault consummated by battery upon a child under sixteen in this case and would make no adjustment to the length of confinement and affirm the sentence.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court